Bruce L. Thall, Esquire
Heather Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Respondents*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Respondents*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, <br><br>     Petitioner, <br><br> for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas <br><br>     -- against -- <br><br> DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp., <br><br>     Respondents. | Case No. 08-cv-7100 |

**ANSWER AND FURTHER RESPOSNE TO THE STATE ATTORNEY GENERAL'S**
**PETITION FOR AN ORDER TO COMPEL COMPLIANCE**
**WITH OFFICE SUBPOENAS**

Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert F. DeStefano, Jr., Kathryn L. DeStefano, (hereinafter "Respondents"), by and through their undersigned counsel, hereby answer and otherwise respond to the Petition filed by the State Attorney General seeking an order to compel compliance with his office subpoenas *duces tecum* and *ad testificandum* propounded upon them. In support of their Answer and Further Response, Dreamland submits the following answer to the numbered paragraphs of the Attorney General's Petition, as follows:

1-2.   Admitted.

3.   It is admitted that the Attorney General purports to predicate the authority for his issuance of his office subpoenas upon New York State Executive Law § 63(12). For the reasons set forth herein and in the Respondents' Memorandum of Law in Opposition to the Attorney General's Petition, he utterly lacks the power to act or issue office subpoenas in connection with the stated subject matter of his investigation.

4-6.   The statute, being a writing, speaks for itself. To the extent that the averments are conclusions of law, no responsive pleading is required. By way of further answer, the Attorney General has not filed an Order with the Supreme Court seeking to enjoin any business activities, the precondition in the text of the statute to his taking proofs and issuing subpoenas in accordance with Civil Practice Law and Rules. Moreover, the Attorney General's office subpoenas are not issued in accordance with Civil Practice Law and Rules. Furthermore, having focused upon Respondents and concluded that they are perpetrators of persistent fraudulent acts, albeit mistakenly, the Attorney General cannot use office subpoenas to gather evidence against Respondents.

7-8.     The statutes, being writings, speaks for themselves. By way of further answer, the law precludes the State Attorney General from evading federal preemption and federal exclusive jurisdiction over questions arising from the Alien Employment Certification filed by Dreamland Amusements, Inc. with the United States Departments of Labor and Homeland Security through purported reliance upon inapplicable state law. Similarly, Dreamland Amusements, Inc. is exempt from the wages, hours, and overtime requirements otherwise imposed under the federal Fair Labor Standards Act because it is an exempt amusement establishment under that Act, and specifically 29 U.S.C. § 213(a)(3)(B). As a result, Attorney General lacks the right or power to investigate the wages paid to Dreamland's H-2B employees in view of the exemption, even were there no preemption or exclusive federal jurisdiction. By way of further answer, the Attorney General is not authorized by law to use his office subpoenas to undertake investigations for any of those entities and/or to avoid or evade the specific requisite preconditions to the assumption by those entities of jurisdiction over any claim of discrimination.

9.     It is admitted that regulations under the New York State Sanitary Code address shower head temperature and hygiene, and sanitary waste facilities at camp grounds. It is denied that the Attorney General has any right or power to utilize office subpoenas under Executive Law § 63(12) to obtain documents or testimony regarding shower head temperature or sanitary portable toilets or bedbugs because there can not be any "repeated fraudulent or illegal acts" or "persistent fraud or illegality" in connection therewith, even if the Attorney General had otherwise the power to enforce the State Department of Health campground regulations.

10-11.  Admitted. By way of further answer, Dreamland Amusements, Inc. is also an entity incorporated under the law of the State of New Hampshire. The incorporation in New

York was the result of a mistake by its prior representatives. It has not been an active corporation in New York; moreover, it is in the process of dissolution in New York.

12. Denied. To the contrary, Respondents are separate and distinct corporate entities, with separate and distinct books and records, filing separate and distinct tax returns, and performing separate and distinct functions. That the Attorney General swears that "these corporate entities appear to operate as a single enterprise," reflects both his haphazard investigation and a degree of analysis consistent with the Attorney General's contention that it has the power to investigate Dreamland for repeated fraudulent or illegal acts and persistent fraud or illegality due to allegations of the hot water temperature at shower heads under State Health Department campground regulations.

13. Respondents deny that they are engaging in any unlawful conduct regarding the failures to pay lawful wages or any other matters. Dreamland is without sufficient information to respond to what the Attorney General's office claims it has received by way of complaints or when it first received them.

14. Denied. To the contrary, had the Attorney General deigned to review the 10,665 documents provided by Dreamland thus far in response to its office subpoenas, it would not be able to "swear" that Dreamland operates "as much as one-half of the approximately nine months they operate each calendar year" within New York State. To the extent they are deemed relevant, Respondents demand strict proof of each such allegation.

15. Denied. Had the Attorney General deigned to review the 10,665 documents produced by Dreamland thus far in response to his office subpoenas, he would know that the number of H-2B employees hired by Dreamland pursuant to its Alien Employment Certification with the United States Departments Labor and Homeland Security, and its "contract" with the

United States Department of Labor, is now approximately 20, all of whom are Mexicans, and that the only H-2B employees that Dreamland has hired and employed through its contracts with the United States Departments of Labor and Homeland Security have been Mexicans, and never in numbers of one-third of one hundred twenty five.

16-21. The statutes, rules and regulations, being writings, speak for themselves. By way of further answer, the Attorney General conflates the role of the State Work Force Agency, as he must, in order to attempt to suggest that the State somehow plays a role other than as a data resource pool for prevailing wages and unemployed United States workers. To the contrary, the procedures set forth in and indeed mandated by the federal statutes and regulations, as well as the duties and obligations imposed upon persons such as Dreamland Amusements, Inc. in submitting Alien Employment Certification Forms ETA-750 to the United States Departments of Labor and Homeland Security, through the administrative, civil and criminal sanctions to which they are subject for the very acts the Attorney General swears are the gravamen of his investigation, are set forth in Exhibit "I" hereto. It is admitted that a blank ETA-750 is attached to the Attorney General's Petition as Exhibit "B." It is also admitted that the federal Form ETA-750 subjects employers who make misrepresentations or fail to adhere to the terms and conditions under which they obtain the seasonal, alien H-2B workers to the full range of federal criminal law by prosecutions at the hands of the United States Department of Justice for felony crimes code violations of false statements and perjury, among others, as is set forth by the Attorney General in paragraph 21.

22-24. Admitted. By way of further answer, the "prevailing wage rates" are not known at the time of the submission of the federal Form ETA-750, but, rather, are computed and added after the application is submitted. It is admitted that Dreamland Amusements, Inc. did hire H-2B

employees during the years 2006, 2007, and 2008. The remaining averments set forth in paragraphs 22-24 are denied. If deemed relevant, strict proof thereof is hereby demanded.

25. It is admitted that the Attorney General has received documents from Dreamland. The remaining averments of paragraph 25 are denied. If deemed relevant, strict proof thereof of each such allegation is demanded. By way of further answer, Articles 6 and 19 of the New York Labor Law and regulations promulgated thereunder are wholly inapposite to the wages, hours and overtime that Dreamland is obligated to pay and the H-2B workers are entitled to receive, due to preemption, exclusive federal jurisdiction, the amusement enterprise exemption under the federal FLSA, and the incorporation of that same exemption into the fabric of the New York Labor Law. By way of further answer, were the position of the Attorney General correct, then the alien, seasonal H-2B workers employed by Dreamland pursuant to its Alien Employment Certification and "contract" with the United States Departments of Labor and Homeland Security would receive far more wages and compensation than the United States born workers employed by Dreamland, thereby undercutting the intent and purpose of the employment of these seasonal, foreign born workers as is set forth in 8 U.S.C. § 1101(a)(H)(ii)(b).

26. Denied, and denied as a legal conclusion to which no responsive pleading is required. To the extent relevant, Dreamland demands strict proof of each allegation.

27. Dreamland cannot admit or deny the averments contained in paragraph 27 because they are beyond Dreamland's knowledge. To the extent they are deemed relevant, strict proof thereof is hereby demanded. By way of further answer, Dreamland makes available at no cost to all of its employees mobile bunkhouses that accompany the mobile carnival on each of its stops. Were such bunkhouses overcrowded or unhygienic, which they are not, there cannot be any discrimination.

28.     Denied. To the extent deemed relevant, strict proof thereof is hereby demanded. By way of further answer, Respondents incorporate their response to ¶ 27, *supra*.

29.     Admitted. By way of further answer, Respondents did not receive the office subpoenas until days after the Attorney General made service upon the New York State Secretary of State.

30-33.  The documents, being writings, speak for themselves.

34-41.  The documents, being writings, speak for themselves. The remaining averments are denied. If deemed relevant, strict proof thereof is hereby demanded. By way of further answer, from his first communication with the State Attorney General, counsel for Respondents suggested that his clients were interested in resolving the matter as easily and quickly as possible through a consent decree, which counsel would recommend be signed even absent proofs of any wrongdoing, and even though the Attorney General lacks subject matter jurisdiction over his investigation.

42.     It is admitted that undersigned counsel was told to appear at a settlement conference June 26, 2008, at the office of the Attorney General. Despite his requests for information regarding the predicates upon which the Attorney General based its investigation in view of undersigned counsel's numerous written analyses and oral submissions to the Attorney General that he lacked jurisdiction, no such information had been forthcoming from the Attorney General. Undersigned counsel arrived at the settlement conference seeking to discuss the Attorney General's absence of jurisdiction. Mr. Thall was ushered into a conference room and confronted with Assistant Attorney General Andrew Elmore, Assistant Attorney General Judith Marblestone, Section Chief of the Civil Rights Bureau Julian Birnbaum, Deputy Attorney General James Rogers, and a summer intern. The four Attorney Generals refused to discuss any

issue of their jurisdiction. They refused to discuss any of the legal predicates upon which they hinged their investigation, and refused to consider preemption, exclusive jurisdiction, the amusement enterprise exemption, or any of the other legal barriers precluding them from proceeding with their investigation or their misuse of office subpoenas in pursuit of that investigation.

There were no settlement discussions. To the contrary, the four Attorneys General demanded that Dreamland pay sums of money to resolve the violations they represented their investigations had found thus far.

In this regard, the Attorneys General represented that as a result of specific violations they had already found, but refused to share, Respondents owed $780,000 in unpaid wages for H-2B workers from January 1, 2006 through May 31, 2008, limited solely to New York State; $2.9 million in unpaid wages for H-2B workers for January 1, 2006 through May 31, 2008 for the entirety of the states within which the mobile carnival stopped; and that if Respondents did not agree to pay the $780,000 (not including costs of investigation) then the Attorney General would issue subpoenas to Respondents going back an additional three years. The most cogent way to convey the lunacy of these computations is that these sums approximate the gross receipts of Dreamland in New York and the entirety of its seasonal tour, respectively. Although reading from a preprinted sheet, the Attorneys General refused to provide it to counsel. The Attorney General did provide copies of the ETA-750s for the years 2006, 2007 and 2008, because they represented that their investigation was based on the ETA-750s and they wanted to make sure that undersigned counsel had them. They refused to provide any other writings, be they redacted "complaints" or other proofs of violations, or surveillance reports, nor did they provide such information orally.

The Attorney General also represented that it had previously found specific acts of discrimination as follows:

(1)     requiring H-2B employees to work outdoors in inclement weather, although the Attorney General acknowledged that Dreamland's other workers did so as well;

(2)     requiring H-2B employees to assemble or disassemble carnival rides in unsafe conditions, as if Dreamland's other workers performed those tasks under different conditions;

(3)     providing unsanitary porto-potties to H-2B workers, as if Dreamland's other workers and carnival customers did not use the same porto-potties, and as if Dreamland did not lease them at each carnival stop;

(4)     yelling at H-2B employees, although the Attorney General acknowledged that non-H-2B employees were yelled at too; and

(5)     providing bunkhouses for H-2B employees with mattresses that allegedly on occasion had bed bugs, without acknowledging or perhaps not being aware that Dreamland offers mobile bunkhouses at no cost to <u>all</u> of its employees, requiring no one to use the mobile bunkhouses, begins each season with brand new mattresses, and hires exterminators to fumigate the bunkhouses several times a year.

The significance to the matter at issue is that regardless of the lack of analysis, thought, and accuracy of the Attorney General's conclusions, the Attorney General had indeed focused upon Respondents and concluded no later than June 26 that Respondents had already committed myriad wrongs. No matter how silly or embarrassing, the Attorney General's conclusions evidence that its office subpoenas are not in aid of any general investigation, but

rather have Respondents in the cross-hair sights of the State Attorney General, who possesses an itchy trigger finger.

43-46. The documents identified in these paragraphs are genuine and authentic. Any inferences drawn by the Attorney General are his and his alone. To the extent any of the assertions made therein are deemed relevant, strict proof thereof is hereby demanded.

47. Admitted. By way of further answer, the Attorney General cites to four cases in response to undersigned counsel's questioning of the Attorney General's office subpoena *ad testificandum* procedures, which provide for counsel's presence only if permitted by the Attorney General, preclude the securing of a transcription of the testimony, and were counsel allowed to be present, preclude counsel from participating other than objecting on attorney-client or Fifth Amendment grounds. Such procedures are not "in accordance with the civil practice law and rules," as set forth in New York Executive Law § 63(12). By way of further answer, the four cases provided by the Attorney General included only one federal case, a Supreme Court case decided in the decade <u>before</u> *Escobido* and *Miranda*.

Most significantly, separate and apart from the Attorney General's writings, the Attorney Generals were abundantly clear at the so-called settlement conference that, based on their investigation, they had already concluded that Respondents had committed multiple violations of the laws and that the investigation was not an investigation into the conditions under which H-2B workers are employed in general, or the mobile carnival field in particular.

Thus, the subpoenas were not sought in aid of a general investigation, but rather were issued to obtain specific information for use in prosecuting Dreamland. As a result, the authorities cited by the Attorney General were wholly inapplicable.

48-49. It is admitted that the documents are authentic and genuine. Any other assertions or inferences derived therefrom, are specifically denied. If deemed relevant, strict proof thereof is hereby demanded.

50-53. The documents referenced are genuine and authentic. Any other averment of fact or inference derived therefrom is denied. To the extent they are deemed relevant, strict proof thereof is hereby demanded.

54.     Admitted. By way of further answer, as is set forth in the accompanying Memorandum of Law, the Attorney General has no right, power or jurisdiction to command the appearance of Respondents for testimony.

55.     Denied as stated. See Counsel's letter of July 14, 2008, appended to the Attorney General's Affidavit at Exhibit S.

56-57. Denied as conclusions of law to which no response is required.

58.     Admitted.

WHEREFORE, Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking Corp., Robert F. DeStefano, Jr., Kathryn L. DeStefano, and any other owners and corporate officers of Dreamland Amusements, Inc., Toy Circus, Inc. and/or Crossroads Trucking Corp. respectfully pray that this Honorable Court enter an Order in the form attached hereto,

denying the Petition of the Attorney General to compel compliance with its office subpoenas *ad testificandum* and *duces tecum*.

Respectfully submitted,

SPECTOR GADON & ROSEN, PC

*[signature]*

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, PC
1635 Market Street, 7th Floor
Philadelphia, PA 19103
214-241-8888/FAX - 215-241-8844
*Counsel for Respondents*

Edward Finkelstein, Esquire [EF-2805]
TARTER KRINSKY & DROGIN, PC
1350 Broadway
New York, NY 10018
212-216-8000/FAX - 212-216-8801
*Local counsel for Respondents*