**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, | : : : | Case No. 08-CV-7100 (JGK) ECF Case |
| Petitioner, | : : | |
| for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas | : : : | |
| -- against -- | : : | |
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp., | : : : : : : : | |
| Respondents. | : | |

------------------------------------------------------------------

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE STATE ATTORNEY GENERAL'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE REMANDED TO STATE COURT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      PRELIMINARY STATEMENT .....................................................................2

II.     PERTINENT FACTS AND PROCEDURAL HISTORY ................................2

III.    THE STATE ATTORNEY GENERAL HAS CONCEDED SUBJECT
        MATTER JURISDICTION AND WAIVED ANY ARGUMENT THAT
        THIS HONORABLE COURT LACKS SAID JURISDICTION BY THE
        FILING OF ITS STATE COURT PETITION IN THIS COURT, THEREBY
        BRINGING THE ISSUES TO THIS COURT'S ATTENTION FOR DECISION ...........8

IV.     THE MOTION TO COMPEL COMPLIANCE, FILED BY PLAINTIFF IN
        STATE COURT, CONSTITUTED A CIVIL ACTION SUBJECT TO REMOVAL .......9

V.      THIS HONORABLE COURT MAY PROPERLY EXERCISE
        SUBJECT MATTER JURISDICTION OVER THIS REMOVED ACTION .................13

VI.     THE COMPLEX ISSUES INVOLVED IN THIS REMOVED ACTION
        ARE UNAVOIDABLY INTERTWINED WITH THOSE IN RELATED
        ACTION, *DREAMLAND AMUSEMENTS, INC. v. CUOMO*, AND, THUS,
        REMAND WOULD CREATE A CLEAR CONCURRENT JURISDICTION
        PROBLEM, POTENTIALLY RESULTING IN INCONSISTENT ORDERS ...............18

VII.    CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

**CASES:**                                                                                          **PAGE(S)**

*Arizona Contractors Ass'n, Inc. v. Candelaria,*
   534 F. Supp.2d 1036 (D. Ariz. 2008) ...........................................................................17

*Bryan v. America West Airlines,*
   405 F. Supp.2d 218 (E.D.N.Y. 2005) ...........................................................................9

*Camacho v. Texas Workforce Comm'n,*
   326 F. Supp.2d 794 (S.D. Tex. 2004) ...........................................................................15

*Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination,*
   70 F.3d 1361 (1st Cir. 1995).......................................................................................20

*Chavez v. Freshpict Foods, Inc.,*
   456 F.2d 890 (10th Cir. 1972), *cert. denied,* 458 U.S. 92 (1973) ...................................17

*Christ the King Regional High School v. Culvert,*
   815 F.2d 219 (2d Cir. 1987)........................................................................................20

*Christian, Klein & Cogburn v. National Association of Securities Dealers, Inc.,*
   970 F. Supp. 276 (S.D.N.Y. 1997)...................................................................10-12, 13

*Colon v. National Car Rental,*
   1993 U.S. Dist. LEXIS 8278, No. 92 Civ. 8503,
   1993 WL 227596 (S.D.N.Y. June 21, 1993) ...................................................................12

*Compdon v. Inter-religious Foundation for Community Organization, Inc.,*
   18 Misc.3d 874, 850 N.Y.S.2d 841 (N.Y. Co. Sup. 2008) ...............................................8

*Cornyn v. Real Party In Interest,*
   110 F. Supp.2d 514 (E.D. Tex. 2000)............................................................................10

*DeCanas v. Bico,*
   424 U.S. 351 (1976)...................................................................................................16

*Ex parte Young,*
   209 U.S. 123 (1908) ..................................................................................................15

*Figueroa v. Kim,*
   813 F. Supp. 267 (S.D.N.Y. 1993)................................................................................12

*Fisher v. Bangor Punta Corp.,*
  1987 U.S. Dist. LEXIS 2179 (S.D.N.Y. Mar. 27, 1987) ................................. 12

*Flood v. Celin Jewelry, Inc.,*
  775 F. Supp. 700 (S.D.N.Y. 1991) ................................................................ 12

*Ford Motor Co. v. Podocheene,*
  221 F. Supp.2d 1070 (D. Ariz. 2002) ........................................................... 15

*Gade v. Nat'l Solid Waste Management Assoc.,*
  505 U.S. 88 (1992) ....................................................................................... 17

*Gardner v. Lefkowitz,*
  97 Misc.2d 806, 412 N.Y.S.2d 740 (N.Y. Co. Sup. 1978) ............................ 8

*GTE Mobilenet of Ohio v. Johnson,*
  113 F.3d 469 (6th Cir. 1997) ....................................................................... 20

*Harlem Teens for Self-Help v. Department of Investigation of City of New
  York,* 122 Misc.2d 1066, 472 N.Y.S.2d 967 (N.Y. Co. Sup. 1984) ............... 8

*Herman v. Fashion Headquarters, Inc.,*
  992 F. Supp. 677 (S.D.N.Y. 1998) .............................................................. 15

*Hicks v. Miranda,*
  422 U.S. 332 (1975) ..................................................................................... 20

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ....................................................................................... 16

*HMB Acquisition Corp. v. Cohen,*
  143 F.R.D. 50 (S.D.N.Y. 1992) ................................................................... 11

*J. & W. Seligman & Co., Inc. v. Spitzer,*
  2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) ............................ 20

*Johnson v. England,*
  356 F.2d 44 (9th Cir. 1966) ........................................................................... 9

*Jones Chemicals v. Distribution Architects Int'l.,*
  786 F. Supp. 310 (W.D.N.Y. 1992) ............................................................. 12

*Karahabodas Co. v. Perusahaan Pertambangan Minyakdangas Bumi Nebara,*
  264 F. Supp.2d 470 (S.D. Tex. 2002) .......................................................... 15

*Louisville & Nashville Ry. Co. v. Mottley,*
  211 U.S. 149 (1908) ..................................................................................... 14

*Lozano v. City of Hazleton,*
   496 F. Supp.2d 477 (M.D. Pa. 2007) ...................................................................17

*Marshal v. Chase Manhattan Bank,*
   558 F.2d 680 (2d Cir. 1977)...............................................................................20

*Midwestern Gas Transmission Co. v. McCarty,*
   270 F.3d 536 (7th Cir. 2001) ..............................................................................20

*Morales v. Transworld Airlines, Inc.,*
   504 U.S. 374 (1993) ......................................................................................14-15

*Myers v. Portland Gen. Elec. Co.,*
   2004 U.S. Dist. LEXIS 15251 (D. Ore. July 30, 2004) .........................9, 10, 11, 3, 14

*Pankos Diner Corp. v. Nassau County Legislature,*
   321 F. Supp.2d. 520 (E.D.N.Y. 2003) ................................................................15

*Perry v. Thomas,*
   482 U.S. 483 (1987)..........................................................................................16

*Shah v. Wilco Systems, Inc.,*
   126 F. Supp.2d 641 (S.D.N.Y. 2000)..................................................................17

*Shaw v. Delta Airlines, Inc.,*
   463 U.S. 85 (1983) ...........................................................................................14

*Sharon v. National Life Ins. Co. of Vermont,*
   1988 U.S. Dist. LEXIS 8799 (S.D.N.Y. Aug. 12, 1988).....................................12

*Smith v. Kansas City Title & Trust Co.,*
   255 U.S. 180 (1921) .........................................................................................14

*Spina v. Department of Homeland Sec.,*
   470 F.3d 116 (2d Cir. 2006)..........................................................................16-17

*Stone & Webster Engineering Corp. v. Ilsley,*
   690 F.2d 323 (2d Cir. 1982), *aff'd sub nom., Arcudi v. Stone &*
   *Webster Engineering Corp.*, 463 U.S. 1220 (1983) ............................................20

*Sussman v. New York State Organized Crime Task Force,*
   39 N.Y.2d 227, 347 N.E.2d 638, 383 N.Y.S.2d 276 (Ct. of App. 1976)...............8

*Swanson v. Liberty Nat'l. Ins. Co.,*
   353 F.3d 12 (9th Cir. 1965) .............................................................................9, 11

*Takahashi v. Fish & Game Comm'n,*
   334 U.S. 410 (1948) ...................................................................................16

*United States v. Richard Dattner Architects,*
   972 F. Supp. 738 (S.D.N.Y. 1997).........................................................17

*Universal Motors Group, Inc. v. Wilkerson,*
   674 F. Supp. 1108 (S.D.N.Y. 1987) .......................................................12

*Virag v. Hynes,*
   54 N.Y.2d 437, 430 N.E.2d 1249, 446 N.Y.S.2d 196 (Ct. of App. 1981)........................8

*Western State Univ. of S. California v. American Bar Ass'n,*
   301 F. Supp.2d 1129 (S.D.Ca. 2004) ....................................................15

*Woodfeathers, Inc. v. Washington County, Or.,*
   180 F.3d 1017 (9th Cir. 1999) ...............................................................20

*Younus v. Shabat,*
   336 F. Supp. 1137 (N.D. Ill. 1971) .......................................................17

## STATUTES AND OTHER AUTHORITIES:

8 U.S.C. 1102(a) ......................................................................................16

8 U.S.C. 1103 ..........................................................................................16

8 U.S.C. 1184(c)(14)(B) ...........................................................................16

8 U.S.C. 1324(a)(h)(2) .............................................................................16

28 U.S.C. 1331.........................................................................................14

28 U.S.C. 1446(b).................................................................................10, 11

McKinney's *C.P.L.R.* 304..........................................................................11

Bruce L. Thall, Esquire
Heather M. Eichenbaum, Esquire
David B. Picker, Esquire [DP-9658]
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888 / FAX- (215) 241-8844
*Lead Counsel for Respondents*

Edward Finkelstein, Esquire  [EF-2805]
TARTER, KRINSKY & DROGIN P.C.
1350 Broadway
New York, New York 10018
Tel:  212-216-8000 / FAX- 212-216-8001
*Local Counsel for Respondents*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK, | : : : |
| Petitioner, | : |
| for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas | : : |
| -- against -- | : : |
| DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp., | : : : : : : |
| Respondents. | : : |

Case No. 08-CV-7100 (JGK)
ECF Case

-------------------------------------------------------------------

**RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO THE**
**STATE ATTORNEY GENERAL'S APPLICATION FOR AN ORDER TO SHOW**
**CAUSE WHY THIS ACTION SHOULD NOT BE REMANDED TO STATE COURT**

Respondents, Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking, Inc., Robert DeStefano, Jr., and Kathryn L. DeStefano (hereinafter "Defendants"\[1]), hereby respectfully respond in opposition to the State Attorney General's Order to Show Cause why this action should not be remanded to State Court and submit this Memorandum of Law in support of said opposition as follows:

## I.     PRELIMINARY STATEMENT

Contrary to the contentions of the Attorney General of the State of New York (hereinafter "Plaintiff" or "State Attorney General"), this action does involve a "civil action" capable of removal and this Honorable Court certainly has subject matter jurisdiction over the issues herein. Accordingly, Defendants' removal of this action was entirely proper and the State Attorney General's request for remand must be denied.

## II.     PERTINENT FACTS AND PROCEDURAL HISTORY

Despite preemption, the State Attorney General has undertaken an investigation and represents that he has found violations of state law warranting both wider investigation and for now the civil prosecution of Defendants. The violations at issue are asserted by the Plaintiff to be state law claims for relief rising solely from the alleged breaches by Defendant Dreamland of

---

[1] /     Despite the caption of this action, Defendants mirror the language utilized by the Plaintiff in order that there is no needless confusion.  Thus, as initiated by the Plaintiff, the Attorney General will be termed "Plaintiff" and the Defendants, Dreamland Amusements, Inc., Toy Circus, Inc., Crossroads Trucking, Inc., Robert DeStefano, Jr., and Kathryn DeStefano will be termed "Defendants" herein.

Moreover, although the Plaintiff has repeatedly alleged the unsubstantiated and unfounded legal conclusion that the Defendants all operate as a single entity and should be treated as such for purposes of the Plaintiff's investigation and these actions, the Defendants certainly dispute this conclusion.  Indeed, the Defendants respond together herein, and act together in all other pleadings, because the arguments are equally applicable to each and all of them; not because they are a single entity.  Quite to the contrary, Dreamland Amusements, Inc. is a New Hampshire corporation, Toy Circus, Inc. is a New York corporation owning and operating one single amusement attraction, Crossroads Trucking, Inc. is a trucking and transportation company, regulated extensively by the federal Department of Transportation, and which does nothing but haul equipment around the country, and Robert DeStefano, Jr., and Kathryn DeStefano are individuals, albeit husband and wife.  There certainly have been no facts shown, or even alleged, by the Plaintiff to support a treating of the individual entities or individuals as one.

2

one pre-typed sentence contained in Dreamland's two page Alien Employment Certification that it signs and files with the United States Departments of Labor and Homeland Security under the federal Immigration and Naturalization Act.   The State Attorney General contends, albeit erroneously, that Dreamland's alleged failures to pay its temporary, seasonal non-agricultural foreign workers the wages due under the federal Certification to the federal departments, deemed by the State Attorney General to be a binding contract, constitutes state law "fraud", in violation of state statutes within his investigative and prosecutorial jurisdiction.  Peripherally, the Plaintiff also contends that the Defendants have violated the civil rights of their H-2B workers, and subjected to those workers to poor working conditions such as working outside in inclement weather.\² However, as has been set forth at length and repeatedly elsewhere, the State Attorney General lacks the authority and jurisdiction to issue office subpoenas or investigate or prosecute the behavior he purports to scrutinize herein.\³   Indeed, no matter how framed, the Attorney General's investigation is uniquely improper and illegal, lacking even a semblance of subject matter jurisdiction, without which he may not lawfully act.

---

² /    Although such horrific employers, the Defendant Dreamland charges no rent or fee at all to any of its employees for their lodging (which is optional as the employees are always free to stay elsewhere), uniforms, laundering of their uniforms, transportation, and, on occasion, food. Additionally, on occasion, the DeStefanos treat their H-2B workers to a professional sporting event, such as a Yankees game or Jets game. Defendant Dreamland has several H-2B employees who have returned year after year after year. Clearly, these Defendants must be ogres to treat their employees so terribly and engender such loyalty.

³ /    Defendants hereby incorporate by reference, as though set forth at length herein, their Answer and Further Response To The State Attorney General's Petition For An Order To Compel Compliance With Office Subpoenas; Affidavit of Bruce L. Thall; and Respondents' Memorandum Of Law In Opposition To The State Attorney General's Petition For An Order To Compel Compliance With Office Subpoenas, with Exhibit s "A" through "I", filed in this action (*Cuomo v. Dreamland Amusements, Inc.*, et al, 08-civ-7100), as well as their Answer Of Plaintiffs To Defendant's Affidavit In Lieu Of A Motion To Dismiss Plaintiffs' Complaint For Declaratory Judgment And Injunctive Relief, with Exhibit "1" and Memorandum Of Law In Opposition To Defendant's Motion To Dismiss Plaintiffs' Complaint, with Exhibit "2", filed in the related action, *Dreamland Amusements, Inc, et al. v. Cuomo*, 08-civ-6321.

The State Attorney General, however, has refused to accept that fact and instead, though his liberal use of office subpoenas ostensibly pursuant to New York Executive Law 63(12), has expanded the temporal scope of his investigation by a factor of two, while preparing the filing of his prosecution of Defendants. Thus, Defendants were compelled to file their Complaint for Declaratory and Injunctive Relief in the United States District Court for the Southern District of New York. The State Attorney General responded by filing in state court a Petition for Enforcement of his office subpoenas, which Petition has been removed by Defendants to this Honorable Court, filed as a related action to their Complaint.

The Attorney General has submitted a 58 paragraph, 18 page Affidavit in support of its Petition seeking to compel Defendants to comply with the Attorney General's office subpoenas. Yet, at no point in its Affidavit has the Attorney General even mentioned that the subpoenas are not issued under the authority of a court, grand jury, or administrative body, but rather are simply office subpoenas.

There are, in fact, two separate sets of office subpoenas, the first dated May 23, 2008 and the second dated July 8, 2008. The former are subpoenas *duces tecum* to each Defendant and subpoenas *ad testificandum* to the individual Defendants. The latter are captioned "supplemental" subpoenas *duces tecum*. One copy of each of the sets of subpoenas *duces tecum* are attached hereto as Exhibits "A" and "B", respectively. The office subpoenas dated May 23, 2008 contain 27 paragraphs of documents sought, many of which paragraphs contain subparagraphs, on ten and one-half single spaced pages. That of July 8, 2008 is equally daunting, with 20 numbered paragraphs, many of which have subparagraphs, on nine and one-half single spaced pages.

Undersigned counsel was retained by Defendants on June 2, 2008. The fulsome subpoenas had not been received by the Defendants until May 28. The subpoenas demanded

compliance on or before June 5, 2008. Given the scope and depth of the subpoenas, the return date was *per se* unreasonable. Upon retention, undersigned counsel contacted the Attorney General's office and much to his surprise in view of the scope, depth and breadth of the office subpoenas was informed by the Attorney General Affiant that the investigation was not an industry wide investigation. To the contrary, the Affiant represented that the investigation involved Defendants alone, and was based upon information already developed by the State Attorney General. Indeed, as written by the Affiant on June 27, 2008, the Attorney General's investigation had already found multiple violations. *See* letter of June 27, 2008, attached as Exhibit "C". Moreover, although the Attorney General Affiant had represented that the investigation was then civil in nature, he opined that in view of findings of persistent fraud, the matter could become criminal.

Counsel hoped that production of documents would cause even the State Attorney General to recognize that it lacked jurisdiction and that its findings and suspicions were erroneous. To that end, Defendants produced documents responsive to the office subpoenas *duces tecum*. From reading the State Attorney General's submissions, one might believe that the Defendants have ignored the office subpoenas. In fact, although such inference is one which the Affiant may wish the reader to draw, the inference is false. Attached hereto at Exhibit "D", are the nine (9) separate letters enclosing documents responsive to the May 23, 2008 office subpoenas. From June 9 through July 9, 2008, Defendants supplied 10,665 documents to the Attorney General.\[4] Each of the letters enclosing documents responsive to the office subpoenas reserved all rights, claims, and defenses of Defendants, including the State Attorney General's lack of power, right or authority to pursue the investigation in the first instance. In addition,

---

[4]/    Defendants cooperated with the State Attorney General's investigation essentially until such time as it became clear, from communications with the State Attorney General itself, that the grounds for the investigation were beyond the jurisdiction and authority of the State Attorney General.

counsel submitted two (2) lengthy letter memoranda to the State Attorney General, which letters set forth the facts and law establishing that Plaintiff lacked the lawful right or power to pursue its prosecution and investigation of Defendants. Counsel's letters of June 24 and July 8, 2008 are attached hereto as Exhibits "E" and "F", respectively.

The letters and letter memoranda, however, fell on deaf ears. As a result, on July 14, 2008, Defendants filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of New York, docketed at 08-CIV-6321, pending before The Honorable John G. Koeltl, and a Memorandum of Law in Support of their Motion for Preliminary and Permanent Injunctive Relief shortly thereafter. By letter of July 14, 2008, attached hereto as Exhibit "G", counsel informed the Attorney General that in view of the filing of the Complaint for Declaratory Judgment and Injunctive Relief, the Defendants would not appear before the Attorney General in response to the subpoenas *ad testificandum* "absent the court ruling on our application," but that in the meantime, our clients would gather documents responsive to the original and supplemental subpoenas *duces tecum*, so that counsel would be in a position to forward responsive documents to the State Attorney General if necessary.

The State Attorney General did not respond to the Defendants' federal court Complaint for Declaratory Judgment. Instead, almost two weeks after Defendants had filed their Complaint in this Court, the State Attorney General filed an Affidavit/Petition with the Supreme Court of the State of New York, seeking an order under C.P.L.R. § 2308(b) to enforce compliance with the office subpoenas propounded his office. In its Affidavit, the State Attorney General swears that it began receiving complaints of Defendants' alleged unlawful conduct in "failing to pay lawful wages and subjecting certain employees to discriminatory treatment" beginning around May of 2007, one year prior to the issuance of the first office subpoena. [AG Affidavit at ¶ 13]. The State Attorney General, moreover, swears that its office subpoenas were issued pursuant to

Executive Law § 63(12) "in connection with an investigation into alleged fraudulent and/or illegal business practices of Defendants." [AG Affidavit at ¶¶ 3 and 28]. Moreover, as is set forth therein and at paragraphs 10 through 25 and 28 of the Affidavit, the predicates for the utilization of New York Executive Law § 63(12) are squarely bottomed upon the alleged failures to pay "proper" wages to the H-2B employees,\[5] as determined by the State Attorney General. This mirrors the basis for the investigation set forth in the State Attorney General Affiant's letter of June 27, 2008, in which the State Attorney General pegs his investigation and jurisdiction to "Dreamland's failure to pay promised wages" and "Dreamland's misrepresentations of the wage rate to be paid to its [H-2B] employees contained in the federal Form ETA-750 Alien Employment Certification." *See* Exhibit "C".

The Plaintiff's State Court application for an order to enforce compliance resulted in the issuance of a Rule to Show Cause, returnable on August 12, 2008. However, because the State Attorney General lacks the power, authority, or right to enforce his office subpoenas for lack of subject matter jurisdiction in view of preemption, and exclusive federal jurisdiction, and because he lacks the right to act at all even were there no preemption or exclusive federal jurisdiction, on August 8, Defendants removed the Rule to Show Cause action to this Court, to be consolidated with their Complaint for Declaratory and Injunctive Relief in order to resolve all issues among and between the parties hereto arising from the State Attorney General's investigation and prosecution of Defendants. Almost thirty (30) days later, on September 3, 2008, the State Attorney General filed its Order to Show Cause and request to remand this action to State Court.

---

[5]/    At Affidavit ¶ 28, the Attorney General swears that his investigation and prosecution is based upon "repeated and persistent fraudulent and illegal conduct" by "failing to pay the full wages required under the law, including the H-2B prevailing wage; failing to pay overtime compensation ..., conducting discriminatory employment practices by paying employees differently based on their ... national origin."

**III.    THE STATE ATTORNEY GENERAL HAS CONCEDED SUBJECT MATTER JURISDICTION AND WAIVED ANY ARGUMENT THAT THIS HONORABLE COURT LACKS SAID JURISDICTION BY THE FILING OF ITS STATE COURT PETITION IN THIS COURT, THEREBY BRINGING THE ISSUES TO THIS COURT'S ATTENTION FOR DECISION**

In the related action, *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, the State Attorney General has filed a Motion to Dismiss the Complaint. However, in lieu of filing a formal Motion to Dismiss, the Plaintiff opted to file a duplicate copy of its Petition for an Order to Compel Compliance with Office Subpoenas, which it had initially filed in State Court. By so doing, the State Attorney General brought before this Court, of its own volition, the very issues it now seeks to remand to the State Court.\[6] This choice by the State Attorney General was an admission that this Honorable Court has subject matter jurisdiction over the subject matter of the

---

[6] /    Indeed, even in its application for remand now before the Court, the State Attorney General continues to put forth its substantive position of attempted justification for its issuance of subpoenas. The State Attorney General contends that he "need only `establish some relevancy and basis for its investigation'." (AG Memo of Law In Support of Motion to Remand, p.8). However, contrary to that bold suggestion, the State of New York courts have long been sensitive to the abuses that can occur by the State Attorney General issuing a non-judicial office subpoena precisely because office subpoenas *duces tecum* and *ad testificandom* yield documents and testimony within the confines of the Attorney General's office that are not generally subject to any post-issuance review. Thus, in fact, the Attorney General's office subpoena is void and voidable unless he makes a preliminary showing to a court that the matter under investigation is within his jurisdiction and the scope of the subpoenas is reasonably related to the exercise of that jurisdiction. *See, e.g., Sussman v. New York State Organized Crime Task Force*, 39 N.Y.2d 227, 347 N.E.2d 638, 641, 383 N.Y.S.2d 276 (Ct. of App. 1976). *Accord Gardner v. Lefkowitz*, 97 Misc.2d 806, 810, 412 N.Y.S.2d 740 (N.Y. Co. Sup. 1978)("it is still the general rule that, as a precondition for the issuance of an office subpoena by the Attorney General, under the investigative authority granted to him by statute, there must exist a subject matter jurisdiction on which the issuance can rest," and "the Attorney General may exercise discretion in the use of his investigative authority only in those areas where he has such authority prescribed by statute, and then only within bounds circumscribed by a reasonable relationship between that which is subpoenaed and its bearing the subject matter under investigation and the public benefit sought to be achieved."). New York courts have held that no office subpoena may be enforced by a court unless or until the Attorney General comes forward with a factual basis "establishing the relevancy of the items sought to the subject matter of the investigation" prior to any order to compel or comply. *Virag v. Hynes*, 54 N.Y.2d 437, ___, 430 N.E.2d 1249, 1251, 446 N.Y.S.2d 196, ___ (Ct. of App. 1981). *Accord Compdon v. Inter-religious Foundation for Community Organization, Inc.*, 18 Misc.3d 874, 850 N.Y.S.2d 841 (N.Y. Co. Sup. 2008)(office subpoenas enforceable only if government can establish authority for engaging in investigation and issuing the subpoenas, reasonable relationship of subpoenaed evidence sought to subject matter of inquiry, and authentic factual basis to warrant investigation); *Harlem Teens for Self-Help v. Department of Investigation of City of New York*, 122 Misc.2d 1066, 472 N.Y.S.2d 967 (N.Y. Co. Sup. 1984).

State Court action and constituted a waiver of any argument to the contrary. It was not until

after Defendants had already filed their response to the Petition for an Order to Compel

Compliance with Office Subpoenas that the Plaintiff chose to file this Motion for Remand.

Accordingly, the State Attorney General should not now be heard to complain, or seek to excise

itself from this Court's exercise of jurisdiction over this removed action.

## IV.    THE MOTION TO COMPEL COMPLIANCE, FILED BY PLAINTIFF IN STATE COURT, CONSTITUTED A CIVIL ACTION SUBJECT TO REMOVAL

The Plaintiff contends that the Petition for an Order to Compel Compliance with Office

Subpoenas, initially filed in State Court, does not constitute a "civil action" subject to removal to

this Court. Plaintiff argues that said pleading is not "an initial pleading setting forth the claim

for relief. . . ." Such an argument is simply contrary to the law of this jurisdiction.

Removal became ripe when the Plaintiff filed a civil action, complete with Index Number

and assigned Judge, seeking a Court Order with which the Defendants would arguably be

required to comply. Such a request, filed with the New York State Court constitutes a civil

action and contains a claim for relief, capable or proper removal to this Court. Indeed, the

federal courts construe the term "civil action" broadly. *Myers v. Portland Gen. Elec. Co.*, 2004

U.S. Dist. LEXIS 15251 at *3 (D. Ore. July 30, 2004). *See also Johnson v. England*, 356 F.2d

44 (9th Cir. 1966); *Swanson v. Liberty Nat'l. Ins. Co.*, 353 F.3d 12 (9th Cir. 1965).

The cases relied upon herein by Plaintiff are inapposite and irrelevant to the case *sub*

*judice*.[7] Indeed, this Court has decided the very issue before it, as have other federal courts

---

[7] /    The State Attorney General cites only one case involving New York law for the proposition that a state court action such as the one involved herein cannot be properly removed. However, that case, *Bryan v. America West Airlines*, was one which clearly could not be properly removed. *Bryan* involved pre-complaint discovery in a personal injury case and the federal court remanded after concluding that it lacked jurisdiction due to incomplete diversity and failure to meet the amount in controversy requirement for diversity jurisdiction. 405 F. Supp.2d 218 (E.D.N.Y. 2005). Notably, therein, the Court stressed the distinction between a case removed based on diversity jurisdiction, as opposed to federal question jurisdiction. *Id.* Thus, *Bryan* is completely irrelevant to the inquiry to be undertaken herein.    con't. . . .

around the country.\[8]  In *Christian, Klein & Cogburn v. National Association of Securities Dealers, Inc.*, this Court, by the Honorable Sonia Sotomayor, determined that a pre-complaint discovery enforcement action filed in New York State Court was removable to this Court. 970 F. Supp. 276 (S.D.N.Y. 1997).  In *Christian Klein*, precisely as in the case at bar, Christian, Klein & Cogburn (hereinafter "Christian Klein") obtained an Order to Show Cause why an order compelling pre-complaint discovery should not issue against National Association of Securities Dealers, Inc. (hereinafter "NASD") in State Court.  *Id.* at 277.  Again, as in the case at bar, Christian Klein's Order to Show Cause application was supported by an Affidavit detailing the alleged bases for any subsequent suit which Christian Klein might file against NASD.  *Id.* Moving to remand, Christian Klein argued that this Court lacked subject matter jurisdiction and that the removal was premature as the Order to Show Cause application did not constitute a civil action subject to removal, precisely as the State Attorney General argues herein.  *Id.*  Refusing to remand the action, Judge Sotomayor specifically cited 28 U.S.C. 1446(b), stating "a notice of removal of a civil action `shall be filed within thirty days after the receipt by the defendant,

---

con't . . . .

Likewise, even the one case outside of New York courts substantively relied upon by Plaintiff, *Myers v. Portland Gen. Elec. Co.,* 2004 U.S. Dist. LEXIS 15251, is so factually distinguishable from the facts of the case *sub judice* as to be of no use in this Court's analysis. In *Myers,* the Court noted that Oregon law specifically provided that the method of pre-complaint discovery utilized therein did not constitute a "civil action" under Oregon law, *id.* at *5, and that there was no indication whatsoever that the pre-complaint discovery would lead to any action brought against the defendant company, *id.* at *4. Therefore, again, the Court's decision in *Myers* has no bearing on the case at bar, wherein New York law specifically considers an order to show cause as to pre-complaint discovery a "proceeding" within the meaning of 28 U.S.C. 1446(b), *see, e.g., Christian Klein & Cogburn v. National Association of Securities Dealers, Inc,* 970 F. Supp. 276, 278 (S.D.N.Y. 1997), and there is a clear indication by the State Attorney General that he has already found, and intends to prosecute, significant violations by the Defendants. *See* citations to State Attorney General Affidavit above at pp. 6-7.

[8] /     For instance, in *Cornyn v. Real Party In Interest*, the Court refused to remand an action initiated by the State, captioned as a "Petition Requesting an Order Authorizing Oral Depositions to Investigate Potential Claims or Suit", where the State of Texas sought pre-complaint discovery against private counsel to investigate potential claims sounding in breach of fiduciary duty and conversion in representing the State. 110 F. Supp.2d 514, 517-518 (E.D. Tex. 2000).

through service *or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action *or proceeding* is based' (Emphasis added)." *Id.* at 277. As Judge Sotomayor reasoned, the removal provision contemplates, by its plain language, removal of actions which are "proceedings", as opposed to actions. Moreover, as the Court also noted, New York law defines a "proceeding" by stating, "a proceeding is commenced and jurisdiction is acquired by an order to show cause or by service of a notice of petition."\[9] *Id.* at 278, *citing* McKinney's *C.P.L.R.* 304. Here, just as in *Christian Klein*, the State Attorney General initiated a proceeding, seeking and obtaining an Order to Show Cause, which constituted a "proceeding" subject to removal under 28 U.S.C. 1446(b). *See Christian Klein,* 970 F. Supp. at 278.

Next, Judge Sotomayor analyzed the issue of whether this Court had subject matter jurisdiction over the removed action to compel pre-complaint discovery; that is, whether the order to show cause set forth a claim for relief. *Id.* In so doing, the Court noted that "[t]his requirement implicates the concept of notice: the very purpose of an `initial pleading' prior to removal is to give the adverse party proper notice, and `to establish the nature of the claim, and whether or not there is, in the constitutional sense, a case or controversy.'" *Id., quoting HMB Acquisition Corp. v. Cohen*, 143 F.R.D. 50 (S.D.N.Y. 1992)(also holding that a pre-complaint discovery application is an initial pleading subject to removal). Judge Sotomayor further looked to the applicable standard, which the Plaintiff herein completely ignores in its application for remand. That is, in deciding the issue of subject matter jurisdiction, the Court must look to determine that "the initial document, by whatever name, which contains enough information to

---

[9] /    As the Court in *Myers* noted, the relevant State's characterization of what constitutes a "proceeding" is entitled to "great weight". *Myers*, 2004 U.S. Dist. LEXIS 15251 at *5 ("In evaluating the substance of the action, the . . . state court's `characterization' of a proceeding is entitled to `great weight'.") *Id., citing with approval Swanson v. Liberty Nat'l. Ins. Co.*, 353 F.2d 12 (9th Cir. 1965). Contrary to the Oregon law at issue in *Myers*, the New York definition of a "proceeding", involved herein, unquestionably falls within the plain language of 28 U.S.C. 1446(b).

allow defendant to intelligently ascertain removability qualifies as an initial pleading." *Id.,* citing *Universal Motors Group, Inc. v. Wilkerson*, 674 F. Supp. 1108, 1112 (S.D.N.Y. 1987), *Colon v. National Car Rental*, 1993 U.S. Dist. LEXIS 8278, No. 92 Civ. 8503, 1993 WL 227596, at *1 (S.D.N.Y. June 21, 1993)(stating, the "intelligently ascertain" standard requires the defendant to apply a reasonable amount of intelligence to the information to ascertain whether action is removable). This same sentiment concerning the "intelligently ascertain" standard has been reiterated time and time again in this jurisdiction, *see, e.g., Figueroa v. Kim*, 813 F. Supp. 267, 268 (S.D.N.Y. 1993); *Flood v. Celin Jewelry, Inc.*, 775 F. Supp. 700 (S.D.N.Y. 1991); *Sharon v. National Life Ins. Co. of Vermont*, 1988 U.S. Dist. LEXIS 8799 (S.D.N.Y. Aug. 12, 1988); *Fisher v. Bangor Punta Corp.*, 1987 U.S. Dist. LEXIS 2179 (S.D.N.Y. Mar. 27, 1987); *Universal Motors Group*, 674 F. Supp. at 1113; *see also Jones Chemicals v. Distribution Architects Int'l.*, 786 F. Supp. 310, 312 (W.D.N.Y. 1992), yet is ignored entirely by the State Attorney General. Of course, the standard is ignored because the answer is so clear: the State Attorney General's State Court Order to Show Cause application, the State Attorney Generals' verbal and written statements to Defendant's counsel, as well as its multiple filings in the related case of *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, have made abundantly clear, without requiring any guesswork, the claims it intends to pursue against the Defendants herein. Those impending claims, as has been briefed extensively elsewhere, are preempted and raise federal questions which fall squarely within this Court's jurisdiction, as is addressed in further detail below.

In sum, as *Christian Klein* establishes beyond question, an Order to Show Cause application filed in New York State Court constitutes a civil action subject to removal. As *Christian Klein* further makes indisputable, where the intent of the State Court applicant is clear to pursue claims otherwise subject to federal subject matter jurisdiction, the target of those

impending claims need not await the filing of a formal complaint to remove the action to this Court. Such is the case here. Accordingly, the State Attorney General's application for remand must be denied.

## V.     THIS HONORABLE COURT MAY PROPERLY EXERCISE SUBJECT MATTER JURISDICTION OVER THIS REMOVED ACTION

Once again, as in the related case of *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, the State Attorney General contends that this Court lacks subject matter jurisdiction over these proceedings. Of course, not every one of the claims involved herein must be federal questions to invoke federal subject matter jurisdiction. *See, e.g., Christian Klein*, 970 F. Supp. at 278. Further, as was held in *Myers*, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." 2004 U.S. Dist. LEXIS 12521 at *3. As has been discussed at length in the Defendants' *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, filings, which are incorporated herein as though set forth at length, this Court may properly exercise subject matter jurisdiction as this case involves significant federal questions arising from federal law that preempts state claims.

The case law relied upon by the State Attorney General is irrelevant to the facts and determinations to be made in this action. As has been discussed at length in the filings in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, the State Attorney General's backtracking and attempts to re-characterize its admitted preliminary findings of violations does not mask that fact that all of the claims stem from or implicate federal law, which preempts state action. Even the State Attorney General admits in the Motion at bar that "[c]omplete preemption, a valid ground for removal, is . . . found in . . . circumstances . . . in which the preemptive force of federal law . . . converts an ordinary state court common-law complaint into one stating a federal claim and substitutes a federal remedy for that law, thereby creating an

13

exclusive federal cause of action." [AG Memo of Law in support of application to remand, p.11]. Such is precisely the case in this instance.

Again, as has been briefed extensively before, the State Attorney General's claims are preempted completely under the provisions of the federal immigration law specific to H-2B workers and the FLSA exemptions. This is not a case involving forgery on a passport application or breach of a collective bargaining agreement where reference to the federal statutes or other provisions is unnecessary. To the contrary, this is a case specifically implicating and involving interpretation and construction of the federal provisions for H-2B workers, which exclusively calls for federal enforcement, federal penalties, and exclusive federal jurisdiction. Accordingly, the State Attorney General's state law claims are preempted.

Of course, authorities need not even be cited for the basic and undisputed proposition that any action may be removed which arises under federal law pursuant to 28 U.S.C. § 1331. Further, however, as was held in *Myers*, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." 2004 U.S. Dist. LEXIS 12521 at *3 (retaining jurisdiction over removed proceeding filed by State to compel pre-complaint discovery to investigate alleged state law claims for conversion and breach of fiduciary duty because claims implicated significant federal law and precedent). Federal preemption claims are based upon federal rights, over which federal courts have jurisdiction under 28 U.S.C. § 1331, precisely because preemption itself is predicated upon the Supremacy Clause of the United States Constitution, thereby necessarily presenting an actionable federal claim of constitutional dimension. *See, e.g., Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 (1983); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921); *Louisville & Nashville Ry. Co. v. Mottley*, 211 U.S. 149, 152 (1908). *See also Morales v. Transworld Airlines, Inc.*, 504 U.S. 374 (1993)(affirming trial court's injunction barring state attorneys

general from using their state's statutes and state's common law to enforce state views that airlines were engaging in deceptive practices, based upon grounds of preemption). Notably, in *Morales*, as herein, the states were attempting to enforce their own state laws, not federal laws, by their state actions. However, as the *Morales* Court noted, as is the case herein, preemption barred the state court claims because the state claims would necessarily implicate and contradict exclusive federal law.

Further it is beyond dispute that federal courts have subject matter jurisdiction over suits to enjoin state officials from interfering with federal rights. Implicit in the federal system, the law has explicitly recognized such jurisdiction since *Ex parte Young*, 209 U.S. 123, 160-162 (1908). *See, e.g., Camacho v. Texas Workforce Comm'n*, 326 F. Supp.2d 794 (S.D. Tex. 2004) (enjoining state proposed rules limiting eligibility for cash and medical assistance); *Western State Univ. of S. California v. American Bar Ass'n*, 301 F. Supp.2d 1129 (S.D.Ca. 2004) (mandatory injunction prohibiting withdrawal of law school's provisional accreditation); *Pankos Diner Corp. v. Nassau County Legislature*, 321 F. Supp.2d. 520 (E.D.N.Y. 2003)(enjoining enforcement of county law barring smoking in restaurants due to loss of business and inability to obtain monetary damages against the state due to Eleventh Amendment); *Karahabodas Co. v. Perusahaan Pertambangan Minyakdangas Bumi Nebara*, 264 F. Supp.2d 470 (S.D. Tex. 2002) (enjoining actions of Indonesian manager to annul arbitral award in Indonesian court, because contractor would be forced to re-litigate issues which contractor had won in district court); *Ford Motor Co. v. Podocheene*, 221 F. Supp.2d 1070, 1088 (D. Ariz. 2002)(enjoining prosecution of action nonmember brought in Native American tribal court following vehicle accident on reservation pending district court's decision as to jurisdiction of tribal court); *Herman v. Fashion Headquarters, Inc.*, 992 F. Supp. 677 (S.D.N.Y. 1998)(Secretary of Labor entitled to injunction against garment manufacturer who failed to pay wages or overtime as provided in the FLSA).

The Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of the Department of Labor have had vested in them the exclusive duties of the "administration and enforcement of the chapter and all other laws relating to the immigration and nationalization of aliens." *See* 8 U.S.C. § 1102(a).   The powers so vested are virtually coextensive with the power to regulate immigration.  *See* 8 U.S.C. § 1103, including (g) thereunder; 8 U.S.C. § 1324(a)(h)(2).  Notably, although the Secretary of the Department of Homeland Security may, by 8 U.S.C. § 1184(c)(14)(B), delegate to the Secretary of Labor these investigative and enforcement duties and rights, the Department of Homeland Security has, to date, chosen not to do so.  Rather, the Department of Homeland Security, in a clear indication of its desire to maintain its exclusive authority over this area of immigration regulation, has solely retained the rights of investigation and enforcement.  Indeed, every Court that has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement.  *See, e.g., Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941)(striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilarary regulations."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); *accord Perry v. Thomas*, 482 U.S. 483 (1987); *DeCanas v. Bico*, 424 U.S. 351, 355 (1976); *Spina v. Department of Homeland Sec.*, 470 F.3d 116, 127-28 (2d Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, *inter alia*, "the immigration laws contain no

16

provision indicating that they are to be interpreted in accordance with state law."); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893-96 (10th Cir. 1972), *cert. denied*, 458 U.S. 92 (1973); *Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F. Supp.2d 1036 (D. Ariz. 2008); *Lozano v. City of Hazleton*, 496 F. Supp.2d 477, 517-528 (M.D. Pa. 2007); *Shah v. Wilco Systems, Inc.*, 126 F. Supp.2d 641, 648-49 (S.D.N.Y. 2000); *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 742 (S.D.N.Y. 1997); *Younus v. Shabat*, 336 F. Supp. 1137, 1140 (N.D. Ill. 1971); *see also Gade v. Nat'l Solid Waste Management Assoc.*, 505 U.S. 88, 108 (1992).

Here, Defendants' federal rights and obligations are squarely at issue; and directly at odds with the State Attorney General's attempts at prosecution. Under the law above, this Court clearly has jurisdiction to enjoin the State Attorney General's actions.

The remaining contentions of the State Attorney General, specifically regarding preemption and abstention, are addressed comprehensively at Defendants' Memorandum of Law in Support of their Motion for Injunctive Relief at II(A), II(B) and II(C) in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, and in the Dreamland Defendants' Memorandum of Law in Opposition to the State Attorney General's Motion to Dismiss the Complaint at II(B), also filed in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, which are incorporated by reference as if fully set forth herein. They are not repeated herein.

The contentions raised by Plaintiff regarding the scope of its investigation and its powers to investigate state law issues are discussed at length in the Dreamland Defendants' Memorandum of Law in Opposition to Petitioner's Motion to Enforce Subpoenas, filed in the action *sub judice*, and which is incorporated by reference as if fully set forth herein, and need not be repeated herein.

Defendant's mischaracterizations and reinventing of the focus of its jurisdiction is addressed at length at I(B) and (C) of the Dreamland Defendants Memorandum of Law in

Opposition to the State Attorney General's Motion to Dismiss Plaintiffs' Complaint, filed in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, which is incorporated by reference as if fully set forth herein. Those discussions, again, need not be reiterated herein.

In light of the above, it is clear that this Court has subject matter jurisdiction over the proceedings at hand and this basis for the State Attorney General's application for remand is without merit. Accordingly, this Honorable Court should retain jurisdiction over this matter.

## VI.   THE COMPLEX ISSUES INVOLVED IN THIS REMOVED ACTION ARE UNAVOIDABLY INTERTWINED WITH THOSE IN A RELATED ACTION, *DREAMLAND AMUSEMENTS, INC. v. CUOMO*, AND, THUS, REMAND WOULD CREATE A CLEAR CONCURRENT JURISDICTION PROBLEM, POTENTIALLY RESULTING IN INCONSISTENT ORDERS

As the Court recognized during Conference on September 2, 2008, when declining the Plaintiff's request for argument on the Motion *sub judice* prior to the pending Motion for Preliminary and Permanent Injunctive Relief and Motion to Dismiss, the issues involved in this request for remand are unavoidably intertwined with the issues involved in the related action, *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321. That is, Dreamland Amusements, et al. seek, by the filing of their Complaint for Declaratory Judgment and Injunctive Relief in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-6321, a ruling that the State Attorney General has exceeded his boundaries and, *inter alia*, lacks the jurisdiction and authority to compel enforcement of the subpoenas *duces tecum* and *ad testificandum* discussed at length above. In this removed action, *Cuomo v. Dreamland Amusements, Inc., et al.*, 08-civ-7100, the State Attorney General seeks a Court Order compelling compliance with the very same subpoenas *duces tecum* and *ad testificandum*. The potential for disparate rulings on the multitude of issues if brought before two distinct courts could not be more palpable.

To remand this action, while retaining jurisdiction over the related action, would result in the distinct possibility of inconsistent orders being issued, leaving Defendants in the quagmire of

continued uncertainty regarding their obligations to both their employees (of <u>all</u> nationalities) and the State Attorney General.  Given the established law, facts, and reasonable inferences therefrom, specifically: (1) that the State Attorney General's investigation exceeds his authority due to federal preemption, (2) that this Court has subject matter jurisdiction and should exercise same due to the uniquely federal issues involved herein; (3) that the Defendants herein filed their federal court action well before the State Attorney General chose to file any state court action; (4) that the State Attorney General has effectively conceded this Court's jurisdiction by filing its State Court petition for enforcement of the subject subpoenas with this Court in lieu of a Motion to Dismiss; (5) that there is no inconvenience or burden to the Plaintiff by proceeding before this Court; (6) that this Court can fairly and intelligently decipher the federal and any peripheral state issues involved herein; (7) that Defendants have already suffered immense and irreparable harm by the State Attorney General's inappropriate overreaching; and (8) that significant national public policy issues are at stake herein,[10] this Honorable Court should retain jurisdiction over

---

[10] /    Defendants herein operate in the same manner as virtually every other mobile amusement enterprise or carnival in the nation, traveling from State to State and paying wages of like kind.  If the State Attorney General prevails in his attempts to persecute the Defendants, Defendant Dreamland will be singled out and essentially put out of business by the disparate requirements the State Attorney General seeks to impose upon it.  Moreover, the State Attorney General has claimed to have jurisdiction to charge Defendants with what they deemed were unpaid wages to H-2B employees in <u>every</u> state in which Dreamland's mobile carnival operated, as opposed to just in New York.  In doing so, the State Attorney General is attempting to become the guardian and enforcer of federal H-2B worker immigration and labor law, a position specifically and explicitly reserved to the United States Department of Homeland Security and, by assignment if it so chooses, the United States Department of Labor.

Further, and significantly, were the State Attorney General correct in his view that Defendant Dreamland was required to pay each H-2B worker prevailing wages and at forty hours per week, and at time and one/half for overtime, the H-2B workers would be paid considerably more than native born United States workers for the same position.  This, of course, directly contradicts and undercuts the FLSA exemption and obliterates both the statute and premise upon which the H-2B workers are hired in the first instance.  This is precisely why states are allowed to enact laws which provide more protection for workers but not laws which, as here, would effectively contradict the FLSA.

<u>con't</u>. . . .

this matter.\[11]   To hand this action back to the State Court will result in a waste of judicial

resources, frustrate the parties' efforts thus far given the extensive pleadings, some of which are

potentially case dispositive, already filed before this Court, and leave open the real possibility of

inconsistent Federal and State Court orders with which the parties would then be required to

---

con't. . . .

　　　Traveling carnivals, such as Dreamland, play an important role in civic and non-profit organization fundraising as such carnivals can only operate where they are partnered with those entities, generating for them hundreds of thousands of dollars annually.  Because the State Attorney General seeks to impose requirements not required under federal law - and indeed which he is preempted from imposing - Defendant Dreamland will be left unable to compete with other carnivals.  Moreover, the law which the State Attorney General seeks to create herein calls for a clear conflict with existing federal law that would draw into question all carnivals around the country.  Such a sweeping effect, clearly impacting and contradicting federal legislative intent, as well as public policy, should be dealt with by this Federal Court, which is best positioned to interpret the multitude of federal laws involved herein.

[11] /     Contrary to the State Attorney General's urging, this Court need not, and should not, abstain from exercising jurisdiction in this matter.  The Federal Courts of Appeal have virtually uniformly held that abstention is inappropriate where a preemption claim is facially conclusive or the preemptive effect of federal law is readily apparent.  *See, e.g., Woodfeathers, Inc. v. Washington County, Or.*, 180 F.3d 1017, 1021-22 (9th Cir. 1999); *GTE Mobilenet of Ohio v. Johnson*, 113 F.3d 469, 475 (6th Cir. 1997); *Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir. 1995)(collecting cases finding *Younger* abstention inappropriate where preemption claim is "facially conclusive" or "readily apparent."); *Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001)(*Younger* inapplicable where state seeks to regulate activities clearly under exclusive federal control).  *See also Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir. 1982), *aff'd sub nom., Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220 (1983) (*Younger* abstention not properly invoked in preemption cases); *Marshal v. Chase Manhattan Bank*, 558 F.2d 680 (2d Cir. 1977)(same); *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987)("It would be futile to abstain in deference to a state decisional body if it should later develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body").  Indeed, in order to warrant abstention under *Younger*, the party opposing the exercise of jurisdiction by the federal courts must establish, *inter alia*, that state proceedings have been initiated "before any proceedings of substance" took place in federal court.  *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).  Plaintiffs' Complaint is concededly a proceeding of substance.  It was filed seventeen (17) days before the State Attorney General filed any matter in any court, or issued process in the name of any court or administrative agency.  Thus, unless the Attorney General's own office subpoena, designed and intended to avoid court or administrative agency control, counter-intuitively somehow initiates a state proceeding, *Younger* is inapplicable on this ground alone.  *J. & W. Seligman & Co., Inc. v. Spitzer*, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) is not to the contrary, because the subpoenas there at issue were propounded pursuant to a state statute specifically authorizing the use of pre-complaint process for investigative purposes and, apparently, were compulsory process, and not office subpoenas.  *Seligman*, 2007 U.S. Dist. LEXIS 71881 at *15.  Counsel has found no case holding that office subpoenas are "ongoing proceedings" under *Younger*.  Moreover, *Seligman's* abstention was bottomed upon the lack of clear preemption and due to clear state original jurisdiction.

comply.    Thus, all factors involved herein weigh heavily in favor of this Court retaining

jurisdiction over this matter, together with *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-civ-

6321, and rendering one conclusive, cohesive, and authoritative decision on the multitude of

federal questions involved herein.

**VII.    CONCLUSION**

As has been shown above, this Court should refuse to remand this action to State Court.

The removal of this action was proper as the matter involves a civil action or proceeding subject

to removal, this Court has subject matter jurisdiction over the issues, the State Attorney General

submitted the issues to this Court by filing his State Court order to show cause application to this

Court in lieu of a formal Motion to Dismiss in *Dreamland Amusements, Inc., et al. v. Cuomo*, 08-

civ-6321, and the issues involved in said related case and this removed action are so intimately

intertwined that the risk of conflicting decisions warrant this Court's retention of both actions to

ensure compatible rulings.

WHEREFORE, Respondents, Dreamland Amusements, Inc., Crossroads Trucking., Inc.,

Toy Circus, Inc., Robert DeStefano, Jr., and Kathryn L. DeStefano, respectfully request that the

State Attorney General's application for an Order to Show Cause and request for remand of this

action to State Court be denied.

Respectfully submitted,

SPECTOR GADON & ROSEN, P.C.

BY:

TARTER KRINSKY & DROGIN, PC          Heather M. Eichenbaum, Esquire
Edward Finkelstein, Esquire [EF-2805]      Bruce L. Thall, Esquire
1350 Broadway                                          David B. Picker, Esquire [DP-9658]
New York, NY  10018                               1635 Market Street, 7th Floor
212-216-8000/FAX - 212-216-8801         Philadelphia, PA  19103
*Local counsel for Respondents*               214-241-8888/FAX - 215-241-8844
                                                               *Counsel for Respondents*

#548803_v2

21

# EXHIBIT "A"

State of New York - Department of State
Division of Corporations

Party Served:
  DREAMLAND AMUSEMENTS INC.

Plaintiff/Petitioner:
  ATTORNEY GENERAL OF THE STATE
  OF NEW YORK

DREAMLAND AMUSEMENTS INC.
2 OLYMPIA LANE
STONY BROOK,  NY 11790

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 05/28/2008 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

Very truly yours,
Division of Corporations

PEOPLE OF THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
LABOR AND CIVIL RIGHTS BUREAUS

---

IN THE MATTER OF THE INVESTIGATION OF
ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

OF

DREAMLAND AMUSEMENTS INC.; TOY CIRCUS,
INC.; CROSSROADS TRUCKING CORP.; ROBERT F.
DESTEFANO, JR.; KATHERYN L. DESTEFANO; and
any other owners and corporate officers of Dreamland
Amusements Inc., Toy Circus, Inc., and/or Crossroads
Trucking Corp.

SUBPOENA DUCES TECUM

---

TO:    *ROBERT F. DESTEFANO, JR.
       KATHERYN L. DESTEFANO
       DREAMLAND AMUSEMENTS INC.
       TOY CIRCUS, INC.
       CROSSROADS TRUCKING CORP.
       2 Olympia Lane
       Stony Brook, NY 11790

**PLEASE TAKE NOTICE THAT YOU ARE REQUIRED** to produce certain items listed

below, on or before  June 5, 2008, at 5:00 p.m. , and on any adjourned dates thereof, and to appear

for an oral examination, under oath, which will be recorded by an official reporter, on June 10, 2008

at 10:30 a.m., and on any adjourned dates thereof, at the offices of the New York State Office of the

Attorney General, Civil Rights Bureau, 120 Broadway, 3rd Floor, New York, in an inquiry by

ANDREW M. CUOMO, Attorney General of the State of New York.  This inquiry is to determine

whether an action or proceeding should be instituted against DREAMLAND AMUSEMENTS INC.,

1

2 Olympia Lane, Stony Brook, NY 11790, TOY CIRCUS, INC., 2 Olympia Lane, Stony Brook, NY

11790, CROSSROADS TRUCKING CORP., 2 Olympia Lane, Stony Brook, NY 11790, ROBERT

F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and any other owners or corporate officers of

Dreamland Amusements Inc., Toy Circus, Inc., and/or Crossroads Trucking Corp. The action or

proceeding may be brought pursuant to and for potential violations of New York Executive Law §

63(12); Article 6 (regarding payment of wages) and Article 19 (Minimum Wage Act) of the New

York Labor Law; 12 N.Y.C.R.R. Part 142 (Minimum Wage Order for miscellaneous industries and

occupations); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; Title VII 42 U.S.C. §§ 2000e *et*

*seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law, Executive Law §§ 290 *et seq.*; the

New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.*; and 10

N.Y.C.R.R. Subpart 7-3 (State Sanitary Code campground regulations), and any other violations of

the aforementioned laws and/or regulations.


**TAKE FURTHER NOTICE THAT** for purposes of responding to this subpoena, the

following definitions shall apply:

a. The terms "documents" and "documentation" mean, without limitation, the original and any and all drafts and copies of any writings of any kind, including computer-stored information, although not yet printed out, that is capable of being reproduced on a computer display or printed. A "document," whether existing in computer storage or manual storage includes not only the final version but each and every preliminary draft or worksheet. Any such document bearing on any page thereof (front or back) any marks such as initials, stamped indices, comments, or notations of any character that were not part of the original text or photographic reproduction thereof is to be considered as a separate document.

b. The term "correspondence" means any communication whether by letter, facsimile, telex, note, electronic mail, or any other medium of communication and all documents concerning such "correspondence."

2

c. The term "concerning" shall be construed in the broadest sense to mean directly or indirectly describing, setting forth, responding to, discussing, relating to, describing, evidencing, constituting or referring to the subject in question, either in whole or in part.

d. "All" means "any and all," and "any" means "any and all."

e. "Including" means without limitation.

f. The terms "and" and "or" have both conjunctive and disjunctive meanings.

g. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of the document request all responses which might otherwise be construed to be outside the scope.

h. The term "DREAMLAND AMUSEMENTS INC." refers to DREAMLAND AMUSEMENTS INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

i. The term "TOY CIRCUS, INC." refers to TOY CIRCUS, INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

j. The term "CROSSROADS TRUCKING CORP." refers to CROSSROADS TRUCKING CORP. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

k. The term "employee" refers to all of the employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including officers, managers, professionals, salespersons, staff, office and clerical employees, trainees and any other person carried on the payroll whether as salaried or hourly employees, employees on commission or independent contractors. Such persons include but are not limited to individuals employed by or providing services in exchange for compensation from DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. pursuant to an H-2B, H-2R and/or other employment-related visa(s) or authorization.

l. The terms "employment," "work" and "employ" refer to any service, paid or unpaid, performed by an employee, that primarily benefits DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

m. The definitions set forth in Rule 105 of the New York Civil Practice Law and Rules are incorporated herein by reference.

**PLEASE TAKE FURTHER NOTICE THAT:**

a. This request is a continuing request requiring supplemental responses in the event that,

3

between the time documents are produced and conclusion of this case or investigation, you become aware of further information or documents.

b. If complete responses cannot be made after the exercise of due diligence to secure the requested information, you are requested to so indicate, to describe the efforts made and the results thereof, and to furnish the information to whatever extent possible.

c. If you object to any of the requests herein, you are requested to state the specific grounds asserted for objecting and not producing any document, to identify each item not produced specifically by its nature, and in the case of objection under claim of privilege, to state the basis on which a privilege is claimed, all persons to whom copies of the document were furnished, and their job titles.

**YOU ARE HEREBY REQUIRED TO PRODUCE** at the time and place aforesaid **the following, as to each and every employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in the State of New York, in whole or in part, covering any and all time periods from January 1, 2006, until the return date of this subpoena:**

1. Any and all documents that identify the name, last known address, last known phone number, age, race, national origin, sex, alienage, immigration status, hours worked, work shifts, worksite location(s), occupational classification, wage rate, gross wages, deductions, net wages, allowances claimed as part of the minimum wage, adjustments, advances, loans, charges, and/or money paid in cash. These documents or records are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.). Subpoenaed documents include, but are not limited to, any and all such written or computer payroll documents prepared for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., or for any third-party, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP. or any third-party. These documents include but are not limited to payroll records; paystubs; notebooks or registers on which employee names and wages are entered; canceled paychecks; and/or cash receipts.

2. Any and all time sheets, time records, time cards, schedules, calendars, and/or other documents, showing any and all shifts, hours, and days worked. These documents are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

3. Any and all documents and/or correspondence concerning any housing, meals,

4

transportation, and/or medical care provided by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the policies, practices and procedures by which employees are assigned to vehicle(s) for sleeping and/or living quarters.

4. Any and all documents and/or correspondence concerning DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. signed by the abovementioned employees and other persons. These documents include but are not limited to pledges, authorization forms, and tax forms.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place aforesaid the following **concerning employment and/or authorization for employment by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., performed and/or to be performed by employees on or after January 1, 2006 until the return date of this subpoena**:

5. Any and all documents and/or correspondence concerning employment and/or authorization for employment of any foreign national, including but not limited to immigrants and non-immigrant aliens, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. Such documents include but are not limited to Applications for Employment Certification (also known as ETA 750s), documents concerning H-2B and/or other employment-related visas (including copies of any and all such visas), Petitions for Aliens To Perform Temporary Nonagricultural Services or Labor, Petitions for A Nonimmigrant Worker, I-94s, I-797s, and/or applications for employment, offers of employment, letters of recommendation, documents concerning the need for temporary non-agricultural services or labor, documents confirming employment, and/or all other attachments and supporting documentation for any and all such applications and/or petitions, and/or proof of service of any of the above to any state or federal agency.

6. Any and all documents concerning other persons and/or entities that provide any service related to the use of the H-2B, H-2R and/or other employment-related visa program by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the recruitment of applicants, the preparation and/or processing of any document listed in Subpoena Question #5, the transportation of H-2B and/or other employment-related visa holders to the United States, preparation of income tax documents of H-2B and/or other employment-related visa holders, and communications to employees about such services.

7. Any and all documents related to the recruitment of employees, including but

not limited to advertisements, applications, interviews with applicants, the recruitment of foreign nationals through the H-2B, H-2R and/or other employment-related visa program, and the terms and conditions of employment that DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. communicates directly and/or indirectly to applicants and/or potential applicants prior to employment.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place aforesaid the following **as to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.,** covering any and all time periods **from January 1, 2006, until the return date of this subpoena**:

8. Any and all documents and/or correspondence concerning personnel policies, rules, guidelines, pay rates, training, discipline, policies on discrimination, and/or any other aspect of employment of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

9. Any and all contracts, collective bargaining agreements, and/or other documents specifying the wage rates, work schedules, benefits, and/or any other terms or conditions of employment. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

10. Any and all documents concerning the operation by and/or participation by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in any fair, carnival, amusement park, and/or other temporary seasonal establishment at which rides, games, contests, and/or food concessions were operated. Such documents include but are not limited to documents sufficient to show the locations, opening and closing dates, hours of operation, and/or sponsors of any fairs, carnivals, and/or amusement parks. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

11. The articles of incorporation, by-laws, charters, annual and quarterly reports, government filings, business certificates, certificates of incorporation, minutes of board meetings, minutes of shareholder meetings, and/or partnership agreements of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP.

12. Any and all documents reflecting the names, addresses, telephone numbers, and positions held over time by each and every officer, director, owner, and/or

6

shareholder of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to annual and quarterly reports, corporate charters, government filings, license applications, business certificates, certificates of incorporation, and partnership agreements.

13. Documents sufficient to show the name, address, and telephone numbers of any and all other business entities in which ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any and all other officers, directors, owners, and shareholders of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. have a direct or indirect ownership interest and/or of which they are officers, directors, members, and/or partners, the nature and extent of any direct or indirect ownership interest, and the position(s) held by each such person.

14. Any and all documents submitted by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to the United States Internal Revenue Service, to New York State taxing authorities, and/or to New York local taxing authorities, including but not limited to all "Form 1099" documents, any and all documents associated with "W-2" forms, for any and all of the employees and/or other persons described above, and any and all quarterly and annual New York State and Federal tax returns, including but not limited to Form NYS-45.

15. Any and all documents referring or relating to total annual and monthly revenue and/or total annual and monthly receipts of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to business records summarizing cash register records or receipts and business records summarizing purchases of products for sale, including but not limited to books of Accounts, Accounts Payable, Cash Books, and Business ledgers, and sales records. These documents or records are to be segregated by month, year, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

16. Any and all documents concerning each and every individual and/or entity (including but not limited to corporations, partnerships, not-for-profit entities, unincorporated associations, vendors, and/or contractors) to whom DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provided goods and/or services and the agreed-upon terms for the provision of such goods and/or services. These documents include but are not limited to contracts, agreements, invoices, orders, accounts payable, and receipts.

17. Any and all documents concerning property (including but not limited to real estate and motor vehicles) in which DREAMLAND AMUSEMENTS INC., TOY CIRCUS,

INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO , and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. has a direct and/or indirect ownership interest and that has been used in connection with the operations of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in New York. These documents include but are not limited to deeds and titles.

18. Any and all agreements by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to lease, rent, and/or provide property (including but not limited to rides, housing, and/or motor vehicles) and/or services, including but not limited to total dollar amount of agreement, parties to agreement, terms of agreement, date of agreement and duration of agreement. These documents or records are to be segregated by year, month, and entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

19. Any and all documents showing expenditures by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., concerning their operations in New York, including, but not limited to records showing rental and/or mortgage payments, salaries, utility bills, and/or payments for licenses and/or permits, and copies of the front and backs of all checks, including bank checks or personal checks, used to pay any and all expenses such as rent, utilities, taxes, license fees, and/or salaries.

20. Any and all documents containing names and/or addresses of suppliers of goods, materials, and/or services for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

21. Any and all licenses, certificates, permits, and/or other documents issued by the New York City or State Department of Health, New York State Department of Labor, New York City Department of Consumer Affairs, New York State Office of Parks Recreation and Historic Preservation, New York City Department of Parks & Recreation, and/or any other state or local government agency in New York to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

22. The account numbers, account signatory authorizations, bank names, and locations of any and all bank accounts held by DREAMLAND AMUSEMENTS INC., TOY

CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. and any and all bank statements for those bank accounts.

23. Any and all documents concerning the following policies and/or coverage of employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. for work done in the State of New York, including, but not limited to, filings with all appropriate governmental agencies, evidence of premium payments, and the terms, scope, and duration of such policies and/or coverage:

    a. workers' compensation policies;

    b. unemployment insurance coverage;

    c. disability insurance policies; and/or,

    d. liability insurance policies.

24. Documents sufficient to show the practices, policies, and procedures by which DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. retains employees with H-2B and/or other employment-related visas, including but not limited to benefits provided to visa holders who work through the end of the visa term, reimbursement for expenses, possession of visa holders' passports and visas for the duration of the visa term, and direct and indirect communications to employees about such practices, policies, and procedures.

25. All documents concerning any complaint submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. regarding work hours, wages paid, deduction of wages, and work-related expenses paid by employees, lodging, work-related illnesses or injuries and/or treatment of work-related illnesses or injuries, or discrimination, harassment, hostile or abusive environment, retaliation or unfair treatment on the basis of sex, race, alienage and/or national origin, whether written or verbal, made by any current or former employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including but not limited to:

    a. copies of complaints;

    b. documents sufficient to show communications regarding complaints, investigations and complaint dispositions, with reasons; and

    c.   any documents related to any and all disciplinary or other action and consideration thereof against persons in connection with the above incidents, allegations, or complaints.

26. All documents concerning the sex, race, alienage and/or national origin of any employee who was disciplined or terminated, including but not limited to any incidents or allegations of failure to follow management directives, or misconduct by employees, disciplinary action taken against an individual or individuals in connection with any such incidents or allegations, the cause or basis of discipline or termination and the disciplinary measure taken.

27. All documents concerning any and all vehicles (including but not limited to trailers and/or recreational vehicles) owned, operated, and/or leased by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in which employees are housed, including but not limited to:

    a.   Documents sufficient to show the vehicles' makes, models, and years, including but not limited to vehicle titles and registrations;

    b.   Documents concerning maintenance and repairs;

    c.   Documents sufficient to show whether vehicles have electricity, potable water, sewer inlet connections and/or if DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provides for sewer collection services;

    d.   Any and all documents concerning the assignment of employees to sleeping and/or living quarters, including but not limited to the names of each employee, the vehicle(s) to which each employee was assigned for sleeping and/or living quarters, and the start and end date of each such assignment; and,

    e.   Any and all complaints, violations and/or citations related to any vehicle owned or operated by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to complaints submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

**You are bound** by this subpoena to produce the requested items and appear at the examination and on any adjourned date thereof, pursuant to C.P.L.R. Art. 23. For a failure to appear, you may be

liable, in addition to any other lawful punishment, for damages sustained by the State of New York, and for a penalty.

WITNESS, Honorable ANDREW M. CUOMO, Attorney General of the State of New York, the 23 day of ____May____, 2008.

ANDREW M. CUOMO
Attorney General of the State of New York

BY: _____
Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

Sworn to before me
this 23 day of
____May____ 2008
_____
Assistant Attorney General

11

# EXHIBIT "B"

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 8, 2008

Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

**Re:**    Dreamland Investigation

Dear Mr. Elmore:

In response to your request, please be advised as follows:

1.    Documents our clients have produced in response to your subpoena Bates stamped DA-10216 through DA-10288 pertain to the year 2006.

2.    Documents our clients have produced in response to your subpoena Bates stamped DA-10424 through DA-10615 pertain to the year 2006.

As I had earlier represented to you, our clients were looking for and in fact obtained documentation you have sought pertaining to the year 2006.  Based on my commitment to you, we have produced them, despite our firm belief, as predicated upon the authorities we have provided to you, that your office is wholly without jurisdiction or standing to investigate the matters that are the subject of your subpoena.

The resolution of that issue will await another day.

Sincerely,

Bruce L. Thall

BLT/jkw

PEOPLE OF THE STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL
LABOR AND CIVIL RIGHTS BUREAUS

---

IN THE MATTER OF THE INVESTIGATION OF
ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

OF

DREAMLAND AMUSEMENTS INC.; TOY CIRCUS,
INC.; CROSSROADS TRUCKING CORP.; ROBERT F.
DESTEFANO, JR.; KATHERYN L. DESTEFANO; and
any other owners and corporate officers of Dreamland
Amusements Inc., Toy Circus, Inc., and/or Crossroads
Trucking Corp.

SUPPLEMENTAL   SUBPOENA
DUCES TECUM

---

TO:    ROBERT F. DESTEFANO, JR.
       KATHERYN L. DESTEFANO
       DREAMLAND AMUSEMENTS INC.
       TOY CIRCUS, INC.
       CROSSROADS TRUCKING CORP.
       2 Olympia Lane
       Stony Brook, NY 11790

**PLEASE TAKE NOTICE THAT YOU ARE REQUIRED** to produce certain items listed

below, on or before _July 15, 2008, at 9:30 a.m._, and on any adjourned dates thereof, at the offices

of the New York State Office of the Attorney General, Civil Rights Bureau, 120 Broadway, 3rd

Floor, New York, in an inquiry by ANDREW M. CUOMO, Attorney General of the State of New

York. This inquiry is to determine whether an action or proceeding should be instituted against

DREAMLAND AMUSEMENTS INC., 2 Olympia Lane, Stony Brook, NY 11790, TOY CIRCUS,

INC., 2 Olympia Lane, Stony Brook, NY 11790, CROSSROADS TRUCKING CORP., 2 Olympia

1

Lane, Stony Brook, NY 11790, ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO,

and any other owners or corporate officers of Dreamland Amusements Inc., Toy Circus, Inc., and/or

Crossroads Trucking Corp. The action or proceeding may be brought pursuant to and for potential

violations of New York Executive Law § 63(12); Article 6 and Article 19 of the New York Labor

Law; 12 N.Y.C.R.R. Part 142; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; Title VII 42

U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; the New York State Human Rights Law, Executive Law

§§ 290 *et seq.*; the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et

seq.*; and 10 N.Y.C.R.R. Subpart 7-3, and any other violations of the aforementioned laws and/or

regulations.

**TAKE FURTHER NOTICE THAT** for purposes of responding to this subpoena, the

following definitions shall apply:

a.  The terms "documents" and "documentation" mean, without limitation, the original and any
    and all drafts and copies of any writings of any kind, including computer-stored information,
    although not yet printed out, that is capable of being reproduced on a computer display or
    printed. A "document," whether existing in computer storage or manual storage includes not
    only the final version but each and every preliminary draft or worksheet. Any such document
    bearing on any page thereof (front or back) any marks such as initials, stamped indices,
    comments, or notations of any character that were not part of the original text or
    photographic reproduction thereof is to be considered as a separate document.

b.  The term "correspondence" means any communication whether by letter, facsimile, telex,
    note, electronic mail, or any other medium of communication and all documents concerning
    such "correspondence."

c.  The term "concerning" shall be construed in the broadest sense to mean directly or indirectly
    describing, setting forth, responding to, discussing, relating to, describing, evidencing,
    constituting or referring to the subject in question, either in whole or in part.

d.  "All" means "any and all," and "any" means "any and all."

e.  "Including" means without limitation.

f.  The terms "and" and "or" have both conjunctive and disjunctive meanings.

g.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of the document request all responses which might otherwise be construed to be outside the scope.

h.  The term "DREAMLAND AMUSEMENTS INC." refers to DREAMLAND AMUSEMENTS INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

i.  The term "TOY CIRCUS, INC." refers to TOY CIRCUS, INC. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

j.  The term "CROSSROADS TRUCKING CORP." refers to CROSSROADS TRUCKING CORP. and/or its agents, predecessors, successors, parents, affiliates, and/or subsidiaries.

k.  The term "employee" refers to all of the employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including officers, managers, professionals, salespersons, staff, office and clerical employees, trainees and any other person carried on the payroll whether as salaried or hourly employees, employees on commission or independent contractors. Such persons include but are not limited to individuals employed by or providing services in exchange for compensation from DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. pursuant to an H-2B, H-2R and/or other employment-related visa(s) or authorization.

l.  The terms "employment," "work" and "employ" refer to any service, paid or unpaid, performed by an employee, that primarily benefits DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

m.  The definitions set forth in Rule 105 of the New York Civil Practice Law and Rules are incorporated herein by reference.


**PLEASE TAKE FURTHER NOTICE THAT:**

a.  This request is a continuing request requiring supplemental responses in the event that, between the time documents are produced and conclusion of this case or investigation, you become aware of further information or documents.

b.  If complete responses cannot be made after the exercise of due diligence to secure the requested information, you are requested to so indicate, to describe the efforts made and the results thereof, and to furnish the information to whatever extent possible.

3

c.  If you object to any of the requests herein, you are requested to state the specific grounds asserted for objecting and not producing any document, to identify each item not produced specifically by its nature, and in the case of objection under claim of privilege, to state the basis on which a privilege is claimed, all persons to whom copies of the document were furnished, and their job titles.

d.  Identify the year(s) to which each document produced refers.

**YOU ARE HEREBY REQUIRED TO PRODUCE** at the time and place aforesaid **the following, as to each and every employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in the State of New York, in whole or in part, covering any and all time periods from July 8, 2002 until December 31, 2005:**

1.  Any and all documents that identify the name, last known address, last known phone number, age, race, national origin, sex, alienage, immigration status, hours worked, work shifts, worksite location(s), occupational classification, wage rate, gross wages, deductions, net wages, allowances claimed as part of the minimum wage, adjustments, advances, loans, charges, and/or money paid in cash. These documents or records are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.). Subpoenaed documents include, but are not limited to, any and all such written or computer payroll documents prepared for DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., or for any third-party, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP. or any third-party. These documents include but are not limited to payroll records; paystubs; notebooks or registers on which employee names and wages are entered; canceled paychecks; and/or cash receipts.

2.  Any and all time sheets, time records, time cards, schedules, calendars, and/or other documents, showing any and all shifts, hours, and days worked. These documents are to be segregated by weekly pay period, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

3.  Any and all documents and/or correspondence concerning any housing, meals, transportation, and/or medical care provided by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the policies, practices and procedures by which employees are assigned to vehicle(s) for sleeping and/or living quarters.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place

4

aforesaid the following **concerning employment and/or authorization for employment by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., performed by employees on July 8, 2002 until December 31, 2005**:

4. Any and all documents and/or correspondence concerning employment and/or authorization for employment of any foreign national, including but not limited to immigrants and non-immigrant aliens, by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. Such documents include but are not limited to Applications for Employment Certification (also known as ETA 750s), documents concerning H-2B, H-2R and/or other employment-related visas (including copies of any and all such visas), Petitions for Aliens To Perform Temporary Nonagricultural Services or Labor, Petitions for A Nonimmigrant Worker, I-94s, I-797s, and/or applications for employment, offers of employment, letters of recommendation, documents concerning the need for temporary non-agricultural services or labor, documents confirming employment, and/or all other attachments and supporting documentation for any and all such applications and/or petitions, and/or proof of service of any of the above to any state or federal agency.

5. Any and all documents concerning other persons and/or entities that provide any service related to the use of the H-2B, H-2R and/or other employment-related visa program by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to the recruitment of applicants, the preparation and/or processing of any document listed in Subpoena Question #4, the transportation of H-2B, H-2R and/or other employment-related visa holders to the United States, preparation of income tax documents of H-2B, H-2R and/or other employment-related visa holders, and communications to employees about such services.

6. Any and all documents related to the recruitment of employees, including but not limited to advertisements, applications, interviews with applicants, the recruitment of foreign nationals through the H-2B, H-2R and/or other employment-related visa program, and the terms and conditions of employment that DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. communicates directly and/or indirectly to applicants and/or potential applicants prior to employment.

**YOU ARE HEREBY FURTHER REQUIRED TO PRODUCE** at the time and place aforesaid the following **as to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.**, covering any and all time periods **from July 8, 2002**

5

**until December 31, 2005:**

7.  Any and all documents and/or correspondence concerning personnel policies, rules, guidelines, pay rates, training, discipline, policies on discrimination, and/or any other aspect of employment of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

8.  Any and all contracts, collective bargaining agreements, and/or other documents specifying the wage rates, work schedules, benefits, and/or any other terms or conditions of employment. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

9.  Any and all documents concerning the operation by and/or participation by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. in any fair, carnival, amusement park, and/or other temporary seasonal establishment at which rides, games, contests, and/or food concessions were operated. Such documents include but are not limited to documents sufficient to show the locations, opening and closing dates, hours of operation, and/or sponsors of any fairs, carnivals, and/or amusement parks. These documents or records are to be segregated by year and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

10. Any and all documents submitted by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to the United States Internal Revenue Service, to New York State taxing authorities, and/or to New York local taxing authorities, including but not limited to all "Form 1099" documents, any and all documents associated with "W-2" forms, for any and all of the employees and/or other persons described above, and any and all quarterly and annual New York State and Federal tax returns, including but not limited to Form NYS-45.

11. Any and all documents referring or relating to total annual and monthly revenue and/or total annual and monthly receipts of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and CROSSROADS TRUCKING CORP. Such documents include but are not limited to business records summarizing cash register records or receipts and business records summarizing purchases of products for sale, including but not limited to books of Accounts, Accounts Payable, Cash Books, and Business ledgers, and sales records. These documents or records are to be segregated by month, year, and by entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

12. Any and all documents concerning each and every individual and/or entity (including

6

but not limited to corporations, partnerships, not-for-profit entities, unincorporated associations, vendors, and/or contractors) to whom DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provided goods and/or services and the agreed-upon terms for the provision of such goods and/or services. These documents include but are not limited to contracts, agreements, invoices, orders, accounts payable, and receipts.

13. Any and all agreements by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHERYN L. DESTEFANO, and/or any other officer, director, owner, shareholder and/or partner of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. to lease, rent, and/or provide property (including but not limited to rides, housing, and/or motor vehicles) and/or services, including but not limited to total dollar amount of agreement, parties to agreement, terms of agreement, date of agreement and duration of agreement. These documents or records are to be segregated by year, month, and entity (i.e., DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.).

14. Any and all licenses, certificates, permits, and/or other documents issued by the New York City or State Department of Health, New York State Department of Labor, New York City Department of Consumer Affairs, New York State Office of Parks Recreation and Historic Preservation, New York City Department of Parks & Recreation, and/or any other state or local government agency in New York to DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

15. Documents sufficient to show the account numbers, account signatory authorizations, bank names, and locations of any and all bank accounts held by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. and any and all bank statements for those bank accounts.

16. Documents sufficient to show the following policies and/or coverage of employees of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. for work done in the State of New York, including, but not limited to, filings with all appropriate governmental agencies, evidence of premium payments, and the terms, scope, and duration of such policies and/or coverage:

    a.  workers' compensation policies;

    b.  unemployment insurance coverage;

    c.  disability insurance policies; and/or,

    d.  liability insurance policies.

17. Documents sufficient to show the practices, policies, and procedures by which DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. retains employees with H-2B, H-2R and/or other employment-related visas, including but not limited to benefits provided to visa holders who work through the end of the visa term, reimbursement for expenses, possession of visa holders' passports and visas for the duration of the visa term, and direct and indirect communications to employees about such practices, policies, and procedures.

18. All documents concerning any complaint submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. regarding work hours, wages paid, deduction of wages, and work-related expenses paid by employees, lodging, work-related illnesses or injuries and/or treatment of work-related illnesses or injuries, or discrimination, harassment, hostile or abusive environment, retaliation or unfair treatment on the basis of sex, race, alienage and/or national origin, whether written or verbal, made by any current or former employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. including but not limited to:

    a.  copies of complaints;

    b.  documents sufficient to show communications regarding complaints, investigations and complaint dispositions, with reasons; and

    c.  any documents related to any and all disciplinary or other action and consideration thereof against persons in connection with the above incidents, allegations, or complaints.

19. All documents concerning the sex, race, alienage and/or national origin of any employee who was disciplined or terminated, including but not limited to any incidents or allegations of failure to follow management directives, or misconduct by employees, disciplinary action taken against an individual or individuals in connection with any such incidents or allegations, the cause or basis of discipline or termination and the disciplinary measure taken.

20. All documents concerning any and all vehicles (including but not limited to trailers and/or recreational vehicles) owned, operated, and/or leased by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING

8

CORP. in which employees are housed, including but not limited to:

a. Documents sufficient to show the vehicles' makes, models, and years, including but not limited to vehicle titles and registrations;

b. Documents concerning maintenance and repairs;

c. Documents sufficient to show whether vehicles have electricity, potable water, sewer inlet connections and/or if DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP. provides for sewer collection services;

d. Any and all documents concerning the assignment of employees to sleeping and/or living quarters, including but not limited to the names of each employee, the vehicle(s) to which each employee was assigned for sleeping and/or living quarters, and the start and end date of each such assignment; and,

e. Any and all complaints, violations and/or citations related to any vehicle owned or operated by DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP., including but not limited to complaints submitted to any agency, court, internal review process, and any owner, manager, or supervisory employee of DREAMLAND AMUSEMENTS INC., TOY CIRCUS, INC., and/or CROSSROADS TRUCKING CORP.

**You are bound** by this subpoena to produce the requested items and appear at the examination and on any adjourned date thereof, pursuant to C.P.L.R. Art. 23. For a failure to appear, you may be liable, in addition to any other lawful punishment, for damages sustained by the State of New York, and for a penalty.

9

WITNESS, Honorable ANDREW M. CUOMO, Attorney General of

the State of New York, the ___ day of _____ July _____, 2008.

ANDREW M. CUOMO
Attorney General of the State of New York

BY: _____

Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

Sworn to before me
this ___ day of
_____ 2008

_____
Assistant Attorney General

10

# EXHIBIT "C"



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ANDREW M. CUOMO
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

<u>By Electronic Mail, Mail and Fax:  (215) 241-8844</u>

June 27, 2008

Bruce Thall, Esq.
Spector Gadon & Rosen, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA  19103

Re:   <u>Dreamland Investigation</u>

Dear Mr. Thall,

This letter is being submitted to advance the settlement discussions on June 26, 2008 by addressing your your request for authority for the New York Office of Attorney General's ("OAG's") jurisdiction over your clients' fraudulent misrepresentations in documents to obtain nonimmigrant ("H-2B") employees.  By providing this information, the OAG is not purporting to represent all jurisdictional bases for all violations of law nor does it waive any assertions of jurisdiction not addressed.

As courts have consistently recognized, under New York Executive Law § 63(12), the Attorney General has broad authority to enjoin repeated or persistent fraud or illegality in the conducting of business, and to obtain injunctive relief, restitution, and damages.  <u>See Matter of State of New York v. Ford Motor Co.</u>, 74 N.Y.2d 495 (1989);  <u>People v. Concert Connection, Ltd.</u>, 629 N.Y.S.2d 254 (2d Dep't 1995);  <u>People by Abrams v. American Motor Club, Inc.</u>, 582 N.Y.S.2d 688 (1st Dep't 1992).  The test of fraudulent conduct under Executive Law § 63(12) "is whether the targeted act has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud."  <u>People v. General Electric Co., Inc.</u>, 302 A.D.2d 314, 314 (1st Dep't 2003).  Violation of federal, state, local law or regulation constitutes "illegality" under § 63(12).  <u>See</u>, <u>e.g.</u>, <u>State v. Scottish-American Ass'n, Inc.</u>, 381 N.Y.S.2d 671, 672 (1st Dep't 1976).

Your clients repeatedly filed Applications for Alien Employment Certification ("ETA 750s") promising under penalty of perjury that they would pay H-2B prevailing wages to their employees for the entire work season in order to obtain labor certifications and visas. As required by the H-2B program, your clients filed the ETA 750s to the New York State Department of Labor ("NYS DOL"). The NYS DOL then determines if the promised wage is sufficient before it may send the complete application to the United States Department of Labor. See 20 C.F.R. § 655.2; 70 Fed. Reg. 41,430 (Dep't of Labor Jul. 19, 2005); Foreign Labor Certification Training and Employment Guidance Letter No. 21-06, Attachment A(IV)(A) (Dep't of Labor, June 25, 2007) (NYS DOL may not accept employers' H-2B applications with "[a] job opportunity containing a wage offer below the prevailing wage[.]"). Dreamland's misrepresentations of the wage rate to be paid to its employees therefore constitutes repeated fraudulent conduct upon New York State, for which the OAG may seek injunctive relief and restitution pursuant to its "extremely broad" § 63(12) jurisdiction. See Lefkowitz v. Bull Investment Group, Inc., 306 N.Y.S.2d 488, 491 (3d Dep't 1974).

In addition, Dreamland's failure to pay promised wages is illegal under Article 6 of the Labor Law. Labor Law § 190(1) defines "wages" for the purposes of Article 6 as including all earnings of an employee for labor or services rendered, regardless of the basis for determining the amount of the wages. Under Labor Law § 198(3), "[a]ll employees shall have the right to recover full wages, benefits and wage supplements accrued during the six years previous." The applicable "wages" under Article 6 of the Labor Law for the Dreamland employees are the H-2B prevailing wages as indicated on Dreamland's ETA 750s. Dreamland's repeated and persistent failure to pay that wage as required by Article 6 is illegality for which our Office has authority under Executive Law § 63(12) to recover restitution, damages, and injunctive relief. See, e.g., People v. Frink America, Inc., 770 N.Y.S.2d 225, 227 (4th Dep't 2003).

Setting aside the civil rights, health code, and other violations we have found, Dreamland clearly has failed to pay its employees the full, promised wages to which they are entitled, and our broad jurisdiction under Executive Law § 63(12) permits a judicial award for full restitution and damages, as well as injunctive relief.

Since you have requested this information in order to help possible resolution of this matter, we trust that you will share this information with your clients.

We expect to hear from you by the close of business Monday, June 30, 2008. While the OAG is willing to continue settlement discussions, the office must proceed with a hearing pursuant to subpoenas ad testificandum personally served on your clients on May 27, 2008. On June 23, 2008 we agreed to a second adjournment of these hearings, to June 26, 2008. Your June 24, 2008 letter stated that you have instructed your clients to refuse to attend a subpoena hearing. Please understand that your clients are under a continuing obligation to testify. If your clients ignore this legal obligation by failing to appear for a hearing, we shall have no choice but to move to compel their testimony.

Please feel free to reach me at (212) 416-6280 should you have any questions regarding this communication.

Sincerely,

Andrew Elmore
Assistant Attorney General
Civil Rights Bureau
New York State Department of Law
120 Broadway, 3rd Floor
New York, New York 10271
(212) 416-6280

# EXHIBIT "D"

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

July 9, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

    **Re:**    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
           Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

        I am enclosing for you the ninth stage of production of documents from
Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the
subpoena duces tecum issued by your office to each of these entities.  Additional documents will
be forwarded to you over the next several days.  We have thus far provided 10,665 documents to
you pursuant to your Office's subpoena.

        We are providing these documents to you in stages, pursuant to your request.  As
a result, the production today and those forthcoming is incomplete.  There may well be
documents responsive to numbered paragraphs that we have not produced in their entirety.
There are additional documents which we are attempting to locate and determine whether they
are responsive to your subpoenas.  We will forward those on to you as well.

        In addition, we are submitting these documents even though we believe that your
office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs,
some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example,
and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed,
perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the
minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2,
8, 14, and others as well.

        Yet, the three entities you have subpoenaed appear to be exempt from minimum
wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes
Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 9, 2008
Page -2-

wages, hours and overtime strictures.  The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."  The New York State regulation echoes the federal regulation in all material respects, with a possible exception for overtime only, which is meaningless given the absence of jurisdiction over wage and hours.  Moreover, to the extent that you are basing your standing and jurisdiction on ETA-750's, we have been unable to find a single statute, regulation, or reported case that permits the New York Office of Attorney General to pursue claims for alleged failure to comply with the wage rate guideposts set forth therein.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities.

Moreover, as I wrote you yesterday in our settlement response memorialized with supporting authorities,  you lack standing to pursue claims based upon United States Department of Labor form ETA-750's.  You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office.  As with the ETA-750 minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder.  It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena.  For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others.  We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

508812

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 9, 2008
Page -3-

---

Responsive to Request No. 23 - Bates DA 010616 - 010665

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw
Encls.

508812

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 2, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:  Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the eigthth stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 2, 2008
Page -2-

_____

wages, hours and overtime strictures.  The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."  The New York State regulation echoes the federal regulation in all material respects, with a possible exception for overtime only, which is meaningless given the absence of jurisdiction over wage and hours.  Moreover, to the extent that you are basing your standing and jurisdiction on ETA-750's, we have been unable to find a single statute, regulation, or reported case that permits the New York Office of Attorney General to pursue claims for alleged failure to comply with the wage rate guideposts set forth therein.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities, and that you lack standing to pursue claims based upon United States Department of Labor form ETA-750's.  You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office.  As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder.  It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena.  For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others.  We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 16 - Bates DA - 010096-010215; DA - 010289-010423
Responsive to Request No. 1 - Bates DA - 010216-010288; DA - 010484-010615

506532

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 2, 2008
Page -3-

Responsive to Request No. 16 and Request No. 10 - DA - 010424-010483

Should you have any questions, please reach out for me.

Sincerely,

*Bruce L Thall*

Bruce L. Thall

BLT/jkw
Encls.

506532

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 20, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

**Re:**  Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the seventh stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities.  Additional documents will be forwarded to you as we are able to locate and review them.

We are providing these documents to you in stages, pursuant to your request.  As a result, the production today and those forthcoming is incomplete.  There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas.  As I emailed you last week, we are reaching out to third parties to secure some documents responsive to your subpoena.  We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -2-

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects. Moreover, it would appear that even the overtime exception to the client's exemption does not apply

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities, under federal and New York law. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 15 - Bates DA - 007357-007411
Responsive to Request No. 27(e) - Bates DA - 007412-007415
Responsive to Request No. 10 - Bates DA - 007416-007459
Responsive to Request No. 16 - Bates DA - 007460-007546
Responsive to Requests **Nos. 16 and 20** - Bates DA - 007547-008096
Responsive to Request No. 20 - Bates DA - 008097-008973

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -3-

Responsive to Request No. 19 - Bates DA - 008974-010095

Should you have any questions, please reach out for me.

Sincerely,

*Bruce*

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 18, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

**Re:**  Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the sixth stage of production of documents from
Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the
subpoena duces tecum issued by your office to each of these entities.  Additional documents will
be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request.  As
a result, the production today and those forthcoming is incomplete.  There may well be
documents responsive to numbered paragraphs that we have not produced in their entirety.
There are additional documents which we are attempting to locate and determine whether they
are responsive to your subpoenas.  As I emailed you last week, we are reaching out to third
parties to secure some documents responsive to your subpoena.  We will forward those on to you
as well.

In addition, we are submitting these documents even though we believe that your
office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs,
some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example,
and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed,
perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the
minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2,
8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum
wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes
Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 18, 2008
Page -2-

_____

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments. Today's staged production includes DA-007281-007337, which are such documents.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 6 - Bates DA - 005602-007280
Responsive to Requests 1 and 2 - Bates DA - 007281-007337
Responsive to Request No. 6 - Bates DA - 007338-007339
Responsive to Requests Nos. 16 and 18 - Bates DA - 007340-007356

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 18, 2008
Page -3-

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 17, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

    **Re:**    Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
              Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

        I am enclosing for you the fifth stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities.  Additional documents will be forwarded to you over the next several days.

        We are providing these documents to you in stages, pursuant to your request.  As a result, the production today and those forthcoming is incomplete.  There may well be documents responsive to numbered paragraphs that we have not produced in their entirety.  There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas.  As I emailed you last week, we are reaching out to third parties to secure some documents responsive to your subpoena.  We will forward those on to you as well.

        In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

        Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 17, 2008
Page -2-

_____

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express documents:

Responsive to Request No. 16 - Bates DA - 004470-005385
Responsive to Request No. 21 - Bates DA - 005386-005409
Responsive to Request No. 25 - Bates DA - 005410-005412
Responsive to Request No. 17 - Bates DA - 005413-005462
Responsive to Request No. 15 - Bates DA - 005463-005516
Responsive to Request No. 14 - Bates DA - 005517-005562
Responsive to Request No. 10 - Bates DA - 005563-005574
Responsive to Request No. 27 (e) - Bates DA - 005575-005584

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 17, 2008
Page -3-

Responsive to Request No. 27(a) - Bates DA - 005585
Responsive to Request No. 16 - Bates DA - 005586-005601

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 16, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

**Re:**   Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the fourth stage of production of documents from
Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the
subpoena duces tecum issued by your office to each of these entities.  Additional documents will
be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request.  As
a result, the production today and those forthcoming is incomplete.  There may well be
documents responsive to numbered paragraphs that we have not produced in their entirety.
There are additional documents which we are attempting to locate and determine whether they
are responsive to your subpoenas.  As I emailed you last week, we are reaching out to third
parties to secure some documents responsive to your subpoena.  We will forward those on to you
as well.

In addition, we are submitting these documents even though we believe that your
office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs,
some with subparagraphs, that comprise your subpoenas duces tecum.  By means of an example,
and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed,
perhaps the major component of your inquiry -- is beyond your jurisdiction.  I refer to the
minimum wage and overtime pay issues.  Indeed, this is suggested by subpoena paragraphs 1, 2,
8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum
wage and overtime pay strictures.  In this regard, 29 C.F.R. 779.385 and 12 New York Codes
Rules and Regulations 142-3.2 appear to exempt our clients from federal and New York State

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 16, 2008
Page -2-

wages, hours and overtime strictures. The federal regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year." The New York State regulation echoes the federal regulation in all material respects.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the FSLA do not apply to any of the subpoenaed entities. You have not provided any regulation or code provision to the contrary.

Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

We previously sent to you document DA-002357. I forgot to inform you that DA-002357 is responsive to subpoena paragraph 12.

Today, I am sending to you by federal express documents:

DA-003838-003848, responsive to subpoena paragraph 17;

DA-003849-003890, responsive to subpoena paragraph 14;

DA-003891-004312, responsive to subpoena paragraph 19; and

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 16, 2008
Page -3-

DA-004313-004469, responsive to subpoena paragraphs 19 and 16.

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 12, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

**Re:**  Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the third stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you over the next several days.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. As I emailed you last night, we are reaching out to third parties to secure some documents responsive to your subpoena. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, New York State has adopted 29 C.F.R. 779.385. That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 12, 2008
Page -2-

_____

requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

 We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

 As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

 If you disagree with my conclusions, please let me know. If you want to discuss it, all you need do is call.

 Regardless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

 There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

 In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

 Today, I am sending to you by federal express documents DA 002746-003837. Each relates to subpoena paragraph (23).

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 12, 2008
Page -3-

Should you have any questions, please reach out for me.

Sincerely,

Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 10, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

> **Re:**     Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
>     Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the second stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you tomorrow or Thursday.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and those forthcoming is incomplete. There may well be documents responsive to numbered paragraphs that we have not produced in their entirety. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, New York State has adopted 29 C.F.R. 779.385. That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 10, 2008
Page -2-

year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

Nonetheless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you by federal express the following documents:

1.    Regarding subpoena paragraph (5), documents Bates stamped DA 002374-002705;

2.    Regarding subpoena paragraph (6), documents Bates stamped DA 002358-002373;

3.    Regarding subpoena paragraph (11), documents Bates stamped DA 002706-002715;

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 10, 2008
Page -3-

_____

    4.      Regarding subpoena paragraph (14), documents Bates stamped DA 002134-002356, 002716-002745;

    5.      Regarding subpoena paragraph (17), documents Bates stamped DA 001912-001936;

    6.      Regarding subpoena paragraph (21), documents Bates stamped DA 002089-002133;

    7.      Regarding subpoena paragraph (23), documents Bates stamped DA 002067-002088;

    8.      Regarding subpoena paragraph (27a), documents Bates stamped DA 001937-002005;

    9.      Regarding subpoena paragraph (27b), documents Bates stamped DA 002006-002033; and

    10.      Regarding subpoena paragraph (27e), documents Bates stamped DA 002034-002066.

        We hope to be forwarding the next shipment of documents to you on Wednesday or Thursday, June 11 or 12, 2008.

        Sincerely,

        Bruce L. Thall

BLT/jkw

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW
SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

June 9, 2008

**Via Federal Express**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

**Re:**   Subpoenas to Dreamland Amusements, Inc., Toy Circus, Inc.,
Crossroads Trucking Corp., Robert F. DeStefano, Jr., and Katheryn L. DeStefano

Dear Mr. Elmore:

I am enclosing for you the first stage of production of documents from Dreamland Amusements, Inc.; Toy Circus, Inc.; and Crossroads Trucking Corp., pursuant to the subpoena duces tecum issued by your office to each of these entities. Additional documents will be forwarded to you tomorrow.

We are providing these documents to you in stages, pursuant to your request. As a result, the production today and tomorrow is incomplete. There are additional documents which we are attempting to locate and determine whether they are responsive to your subpoenas. We will forward those on to you as well.

In addition, we are submitting these documents even though we believe that your office may lack jurisdiction to investigate matters suggested by the 27 numbered paragraphs, some with subparagraphs, that comprise your subpoenas duces tecum. By means of an example, and in no way by means of limitation, it appears to us that a component of your inquiry -- indeed, perhaps the major component of your inquiry -- is beyond your jurisdiction. I refer to the minimum wage and overtime pay issues. Indeed, this is suggested by subpoena paragraphs 1, 2, 8, 14, and others as well.

Yet, the three entities you have subpoenaed appear to be exempt from minimum wage and overtime pay strictures. In this regard, New York State has adopted 29 C.F.R. 779.385. That regulation provides that an amusement establishment operating on a seasonal basis may qualify as an exempt establishment to which the minimum wage and overtime pay requirements of the Act do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 9, 2008
Page -2-

_____

year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

We have a question whether the three subpoenaed entities operate for more than seven months in each calendar year. We have no question but that the average receipts for any six months of the year are less than 1/3 of the average receipts of the other six months.

As a result, we believe that the entities you have subpoenaed are indeed exempt amusement establishments so that the minimum wage and overtime pay requirements of the Act do not apply to any of the subpoenaed entities.

Nonetheless, the clients are providing to you the documentation that is responsive to the subpoenas duces tecum, including the paragraphs that focus upon wage and hour and overtime issues, despite our clients' qualifications as exempt amusement establishments.

There are other issues pertaining to the jurisdiction of your office. As with the minimum wage and overtime pay matters, we are producing the clients' documentation, without waiver of our clients' rights to challenge the jurisdiction of your office in these or any other regards.

In addition, we are submitting documentation in response to specific numbered paragraphs and subparagraphs contained thereunder. It would appear, however, that documentation responsive to a particular paragraph of your subpoena may also be responsive to another paragraph of your subpoena. For example, documents falling within subpoena duces tecum paragraphs 1 and 2 may be responsive as well to subpoena duces tecum paragraphs 10, 16, and 19, among others. We are therefore relying upon you to consider our clients' documents submitted in response to specific subpoena duces tecum paragraphs as being responsive to other paragraphs of your subpoenas as well.

Today, I am sending to you federal express the following documents:

1. Regarding subpoena paragraph (1), documents Bates stamped DA 00791-001362;

2. Regarding subpoena paragraph (10), documents Bates stamped DA 001363-001636;

3. Regarding subpoena paragraph (15), documents Bates stamped DA 0001-00790; and

4. Regarding subpoena paragraph (22), documents Bates stamped DA 001637-001911.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 9, 2008
Page -3-

_____

        We will be forwarding the next shipment of documents to you on Tuesday, June 10, 2008.

                    Sincerely,

                    Bruce L. Thall

BLT/jkw

# EXHIBIT "E"

# SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

June 24, 2008

**Via Email @oag.state.ny.us**
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY  10271

      **Re:**    Dreamland/OAG Investigation

Dear Andrew:

      I am taking the liberty of sending this letter to you, as well as to your section and division heads who have participated in some of our phone conversations, in order to make sure that there is no misunderstanding between us.

## The Business of Dreamlands and its Limited Operations in New York

      My client is a nomadic, mobile amusement park, generally partnering with charitable, non-profit organizations as part of their fund raising efforts.  From early spring into the early fall, Dreamlands operates its amusement park with its charitable organization partners in states up and down the East Coast.  This year, Dreamlands is conducting its amusement park business in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and in New York State as well.

      This year, Dreamlands will operate at New York State venues for approximately 6 to 7 weeks total, with stops as short as 3 days.

      You are therefore conducting an investigation into an amusement park business that spends limited time in New York State, bringing the weight of your office to bear upon Dreamlands for the 6 or 7 weeks within the year during which our clients set up their amusement park within New York in conjunction with their charitable partners.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -2-

## Dreamlands has Cooperated Despite the Fact that Your Office Lacks Jurisdiction

Your Office initiated its investigation by subpoena dated May 23, 2008. We were retained on behalf of the clients on June 2, 2008. From then through June 20, in response to your request that responsive documents be produced piecemeal and in stages, rather than at one time, we have reviewed, Bates stamped, and sent on to you seven separate productions of responsive documents, comprising 10,095 documents thus far. As I represented to you, additional documents will provided as they are located and reviewed by us. In addition, in response to requests from you, we have provided identifying information with respect to responsive documents whenever you have requested such additional information. We intend to continue to do so.

From the first week in June, indeed dating from our first conversation, I have advised you that your Office lacks jurisdiction to conduct the investigation on any number of grounds. Included with each of the seven separate productions sent to you have been identifications of some of those grounds.

The absence of jurisdiction as previously communicated to you is made manifest by 29 C.F.R. 779.385 and 12 New York Codes Rules and Regulations 142-3.2, each of which we have repeatedly cited to you. The federal regulation exempts our clients from FSLA wages, hours and overtime strictures. As previously recounted for you, the federal regulation provides that an amusement establishment operating on a seasonal basis qualifies as an exempt establishment to which the minimum wage and overtime pay requirements of the FSLA do not apply, so long as the amusement establishment (a) does not operate for more than seven months in any calendar year or "(b) during the preceding calendar year, its average receipts for any six months of the year were not more than 33 1/3 percentum of its average receipts for the other six months of such year."

You have acknowledged the applicability of the federal regulation, but stated its application is fact sensitive. You now have sufficient documentation to establish beyond any shadow of a doubt that the clients' average receipts for any six months of the year are not more than a third of its average receipts for the other six months of the year.

Since I am sure that you and your investigators have been pouring over the documents sent to you, that fact cannot now be disputed.

The New York State regulation we have cited to you echoes and incorporates the federal regulation's exemption of Dreamlands as an amusement establishment in all material respects regarding wages and hours. At most, the New York regulation may, but does not necessarily, provide you with some jurisdiction with respect solely to overtime; however, there is

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -3-

---

no question but that you have no jurisdiction over wages and hours under the FSLA and under New York law.

### Applications to the United States Department of Labor do not Provide you with Jurisdiction

During our most recent telephone conversation, in which you were joined by Judith Marblestone, Esquire, Julian Birnbaum, Esquire, and Richard Balletta, Esquire, the Office of Attorney General articulated a different theory of jurisdiction. Specifically, your office contended that in connection with the H-2B non-agricultural workers obtained for Dreamlands by unrelated entities who specialize in seeking and obtaining United States Department of Labor temporary labor certifications for such non-agricultural, seasonal workers, due to the shortage of US workers to fill the laborer positions for Dreamlands annual tours, your office voiced an issue which you contended provided it with jurisdiction. Specifically, your office represented that by having unrelated third parties make application to the United States Department of Labor on Dreamlands' behalf, including their filling out forms I-129, I-907, the Application for Alien Employment Certification, and other federal forms, Dreamlands has through some unidentified mechanism somehow subjected itself not to the jurisdiction of the United States Department of Labor, but rather to the jurisdiction of the Office of the Attorney General of the State of New York. Moreover, your office contends that it has jurisdiction over Dreamlands due to the content of the forms submitted to the federal government, with respect to the payment of prevailing wages as determined by the United States Department of Labor, and for each of the specific locations at which Dreamlands partners with charitable institutions, presumably your jurisdiction limited to the 6 to 7 weeks which Dreamlands spends in New York State.

This is not the time or place to question your jurisdiction based upon the submissions made to the United States Department of Labor. Suffice it to say that any assertion of you jurisdiction based upon the submissions to the United States Department of Labor is tenuous.

Regardless, were there an issue derived from your perception of representations made in documents on behalf of Dreamlands to the United States Department of Labor, perforce that august body has the right, power and duty to determine whether any issue arises, and, if so, pursue such issue under traditional notions applicable to the law of contracts, including any claims of breaches in connection with such contracts.

The contention of contract breach, however inaccurate as will be set forth below, is wholly absent from any communications from the Office of the Attorney General, assuming *arguendo* that you did have jurisdiction over such representations made to the United States Department of Labor.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -4-

Were you proceeding on a breach of contract basis, by now you would have taken me up on my offer made within days of our retention by the clients, to resolve your investigation by a consent decree, giving your office the right to vacate, correct, or add to that decree were further client documentation provided to your office as part of the continuing staged production you have requested to give you reason to believe that something more need be done.

There has not yet been any such proposal submitted to me, despite my written suggestions and our oral communications.

## Apparent Scorched Earth Policy

Pursuant to the subpoenas themselves, and separate writings, and oral conversations, your office has pegged its jurisdiction upon New York Executive Law Section 63. That statute sets out the general duties of the Attorney General, including the power to subpoena witnesses and books for "inquiries into matters concerning the public peace, public safety and public justice." [Section 63(8)]. It is pursuant to that Section that we have provided over 10,000 documents to you, and cooperated with your investigation.

However, as has now been made abundantly clear by your office, your investigation is predicated upon subsection 12 of section 63 of the New York Executive Law. That section permits the Attorney General to seek orders, direct restitution and damages, and other relief "whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transactions of business, ..."

You and your office have generally represented and now made crystal clear that your office is proceeding against our corporate and individual clients, who are officers, directors of our corporate client, based upon some notation of "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality" in connection with the applications submitted for Dreamlands to the United States to obtain H-2B non-agricultural seasonal workers and, specifically, regarding their compensation.

Although you have represented to me that your investigation is civil in nature, the words "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality" have strong, overwhelmingly criminal overtones. Moreover, the zeal, energy, and exuberance with which you have pursued this investigation echoes those strong criminal overtones.

Such criminal overtones are reinforced by your email of yesterday evening. That email advises me that the testimony you want from my individual clients will not be a deposition under civil law, but rather an oral examination under Section 63(12), which itself hinges solely

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

June 20, 2008
Page -5-

upon "repeated fraudulent or illegal acts or otherwise [that] demonstrate persistent fraud or illegality." You email also advises me that my clients have no right to counsel; that you will deign allow me to be present so long as I only raise "privilege" objections; and that I can neither cross examine nor ask any questions whatsoever. Moreover, you also advised me that my clients will not receive a copy of the transcript.

I have been in front of grand juries that have allowed clients' greater rights than those you are willing to provide to my clients.

Sadly, since the Office of the Attorney General has chosen to proceed under 63(12) targeting fraudulent or illegal acts demonstrating persistent fraud or illegality of my clients, whose presence in New York is limited to 6 or 7 weeks a year, rather than by breach of contract, I am forced to respond accordingly, in order to protect the rights of my clients. All this even though, as set forth below, there is no contract breach, much less criminal conduct, even assuming that your office had jurisdiction to investigate based upon the submissions made for my clients to the United States Department of Labor, or under the FSLA and the New York Code.

In short, I cannot permit you to depose my clients in view of what appears to be a criminal investigation, despite the fact that no criminality, or even civil contract breach, exists.

As a result, my clients will not appear for your oral examination pursuant to Executive Law Section 63(12). For me to allow them to testify in view of what is set forth herein would be tantamount to malpractice.

**<u>Dreamlands Will Continue to Cooperate With Your Investigation</u>**

Despite what I believe to be your lack of jurisdiction over the subject matter of your investigation with regard to my clients, we will continue to cooperate with your investigation. I believe that additional payroll records for the year 2006 will soon be located. On receipt and review, we will forward them to you. Should other records become available, those, too, will be forwarded to you.

In the past, we have answered questions that you have raised regarding certain documentation. We will continue to do so; however, as in the past, the answers will be through me, akin to a proffer, and not directly from the clients.

Regarding the testimony of my clients, as you know better than I, there are several mechanisms that you can utilize in order to moot the concerns I have regarding what appears to be the criminal focus of your investigation. I encourage you to utilize them; however, absent

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

June 20, 2008
Page -6-

your recourse to such mechanisms, I cannot permit them to testify in the face of what appears to be a blunderbuss criminal investigation.

### Facts by Proffer

As I have represented, I will continue to answer specific questions you have regarding my clients, because I believe that such information should go far towards your terminating your investigation as improvident, separate and apart from the serious and substantial questions regarding your jurisdiction in the first instance.

By way of example, but not by way of limitation, although you and your colleagues have been particularly closed mouthed about the nature of your investigation, as is the norm with any criminal investigation, our discussions in response to my contentions that you lack jurisdiction to investigate have made clear your office's interest in wages and hours and overtime.

Regarding those issues, you should be aware that regarding the non-resident H-2B non-agricultural seasonal workers, the hand written weekly payroll sheet dollar figure under the column "gross" represents the actual dollar amount paid to each of the H-2B workers. None of that sum is required to be paid by the employee for the lodging provided by Dreamlands. None is required to be paid for food provided by Dreamlands. No "hidden charges" are taken from any of the H-2B workers reported gross salary.

In addition, as I am sure your investigators have reported to you, the gross payroll amount remains constant, and is never varied or diminished due to (a) a worker having no work assigned to him/her on a specific day or days; or (b) weather limiting or canceling the operations of the amusement park on specific days; or (c) for any other reasons.

To the contrary, the gross payroll sum reflected on the handwritten payroll sheets is a figure based upon long experience that is intended to and does include compensation for actual hours worked and overtime.

It is these facts, together with the absence of any deduction from the gross salary figure that appears on the payroll sheets that have resulted in my repeated entreaties to you for a consent decree. Indeed, knowing what a full, fair, and unbiased investigation would perforce conclude, I have beseeched you for a consent decree, with your option to vacate or modify, so that the investigation will end with your office having the assurance that whatever practice you deemed inappropriate would be remedied, with enforcement by virtue of the decree.

SPECTOR GADON & ROSEN, P.C.
  ATTORNEYS AT LAW

June 20, 2008
Page -7-

_____

I am still hopeful that such a resolution will occur on you, your three colleagues and your investigators digesting this information. If client affidavits to that effect would achieve that result, I will consider providing them.

### <u>Next Steps</u>

What happens next is up to you. We can enter into a reasonable consent decree. You can secure some kind of immunity for my clients. You can proceed with your investigation, and we can engage in a lengthy motion practice which raises the specter of a court ruling consistent with my position, holding that you lack jurisdiction over the subject matter of your investigation.

You can use the power of your office to bankrupt my client. Your resources are far greater than those available to the nomadic Dreamlands amusement park. It would be a pity if you choose to do so, given the facts set forth above and the 6 to 7 weeks a year that the clients operate in New York.

The choices are yours.

Sincerely,

Bruce L. Thall

BLT/jkw

# EXHIBIT "F"

# SPECTOR GADON & ROSEN, P.C.

### ATTORNEYS AT LAW

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

E-MAIL
bthall@lawsgr.com

July 8, 2008

**Via Email @oag.state.ny.us**
Andrew Elmore, Esquire
Judith Marblestone, Esquire
Julian Birnbaum, Esquire
Richard Balletta, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

    **Re:**    Response to Your Settlement Proposal and
                  Counter Proposal of Dreamland

Dear Andrew:

        The enclosed constitutes the substantive response of our clients to the settlement offer promulgated by the Office of the Attorney General of the State of New York, together with an explanation of the predicates on which it is founded.

        Dreamland itself conducts its mobile carnival business, generally partnering with charitable, non-profit organizations as part of their fund-raising efforts, along the East Coast of the United States, in 2008 operating in Georgia, North Carolina, Connecticut, New Hampshire, Vermont, New Jersey, Pennsylvania, and New York State. Your Office purports to have the power to challenge my clients' performance under the totality of Dreamland's contract with the United States Department of Labor, even though only a small percentage of its business is conducted at locations in New York.

        We have previously provided to you the authorities disclosing that our clients are an amusement enterprise, so that they are exempt from the wages and hours and overtime strictures of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and specifically section 13 thereunder, and the complementing federal regulations, codified at 29 C.F.R. 779.385. Similarly, we have previously provided to you 12 New York Codes Rules and Regulations 142-2.2 (and 142-3.2), which include the FLSA exemption of our clients from the wages and hours strictures, through adopting the exemptions set forth in the Fair Labor Standards Act, including the exemption for amusement enterprises.

508078

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -2-

_____

As a result, no employee of our clients has any claim of entitlement to wages, hours or overtime work standards as set forth in federal or New York Code, regardless of whether the worker is a natural born citizen or an alien.[1]

At our meeting, you disclosed that the New York Office of the Attorney General is not proceeding under wages, hours or overtime as set forth in the FLSA or New York Code. Rather, your theory is based upon a contract between our clients and the United States Department of Labor. In this regard, you assert that our clients have engaged in repeated or persistent fraud or illegality in the conducting of its carnival business, and specifically with regard to federal Department of Labor forms ETA-750 (Applications for Alien Employment Certification). You contend that in signing those United States Department of Labor form contracts for each of three years, 2006, 2007, and 2008, Dreamland alone,[2] and not our other clients, contracted under penalty of perjury to the United States to pay United States Department of Labor prevailing wages to non-immigrant, H-2B seasonal employees obtained by others for our clients for their mobile carnival; further, you contend that our clients breached the contracts, and that the breach of the contract with the United States Department of Labor gives the New York Office of the Attorney General jurisdiction over what you deem to be the fraudulent misrepresentations, pursuant to New York Executive Law § 63(12), even though the contract was exclusively entered into with and approved by the United States Department of Labor.

The federal forms ETA-750 contain columns for estimated hours per week, estimated overtime hours, estimated weekly wages, and estimated weekly overtime at boxes 10 and 12. Only estimates can be made on signing the form, because on application to the United States Department of Labor, the final schedule of carnival locations and dates, and hours consumed on each date have not been determined. The estimates are not a guarantee of the number of hours that each H-2B worker will be asked to perform during each week.

Were there any questions regarding these facts or their interpretation, the United States Department of Labor is the sole entity which can answer them.

It is difficult to conceive how anyone could view the affixation of a signature by Dreamland to constitute a guarantee of specified hours of work per week. Moreover, precisely because the FLSA and New York Analog exempt American citizens who work for Dreamland

_____

[1] You also averred that my clients violated Civil Rights statutes because, inter alia, the porto-johns they lease for use at carnival sites are not sufficiently clean and because workers, including H-2B aliens, are forced to work in inclement weather. The short answers are sue the lessors and buy yourself a rain slicker at Family Dollar. The power of your Office to bring Civil Rights claims is not otherwise addressed in this response.

[2] The United States Department of Labor forms ETA-750 were submitted by Dreamland Amusements, only, and not by Toy Circus or Crossroads. In fact, none of the latter have any H-2B non-agricultural, seasonal employees.

SPECTOR GADON & ROSEN, P.C.
ATTORNEYS AT LAW

July 8, 2008
Page -3-

_____

from wages and hours strictures, your construction of the United States Department of Labor forms ETA-750 would create the anomalous situation of alien workers being guaranteed more money for displacing American workers than the American workers would receive for performing those services. Such a conundrum ignores and undercuts the express policy of the United States in creating its H-2B programs in the first instance. See, e.g., 8 U.S.C. § 1101(a)(4)(ii)(B).

Putting facts and logic aside however, your Office lacks the right or power to claim jurisdiction over or standing to pursue the averments that our clients have engaged in repeated or persistent fraud or illegality through your contention that they failed to pay prevailing wages per contract wit the United States Department of Labor to the H-2B seasonal employees, as set forth below.[3]

## PREEMPTION AND THE SUPREMACY CLAUSE

Resisting the temptation to refer you to treatises on Federal Preemption and the Supremacy Clause, suffice it to say for purposes of your investigation that the powers of Congress over Commerce and Immigration, as set forth in Article I, Section 8, Clauses 3 and 4 of the Constitution, are exclusive and paramount, and hold sway over states, as required by Article VI, Clause 2, known as the Supremacy Clause. The paramount and exclusive jurisdiction is even more pointed following the aftermath of the plane hijackings that occurred on September 11, 2001, and the resulting plethora of federal enactments governing aliens and the conduct of their entry into the United States by the federal government as part of its comprehensive immigration program.

Every aspect of immigration, including that pertaining to seasonal workers, is specifically set forth at length in phone book sized volumes within the United States Code and the Code of Federal Regulation.

### Federal Statutes and Federal Regulations

8 U.S.C. § 1101(a)(H)(ii)(b) sets out Congress's power to enact laws governing aliens residing in a foreign country which they have no intention of abandoning who come to the United States "to perform temporary service or labor if unemployed persons capable of performing such service or labor cannot be found in this country." Exercising that power, the Secretary of Homeland Security, the Attorney General of the United States, and the Secretary of

_____

[3]     Whether the United States Department of Justice could prosecute such claims as false statements under 18 U.S.C. § 1001, or as mail fraud under 18 U.S.C. § 1341, or under RICO pursuant to 18 U.S.C. § 1961 is unclear in view of primacy of the regulatory scheme involving the Departments of Homeland Security, Labor, Agriculture and Justice. E.g., *Hoffman Plastics Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). What is clear is that the New York Office of Attorney General has no such power.

SPECTOR GADON & ROSEN, P.C.

ATTORNEYS AT LAW

July 8, 2008
Page -4-

the Department of Labor have been exclusively vested with the "administration and enforcement of the chapter and all other laws relating to the immigration and naturalization of aliens," as set forth therein. See 8 U.S.C. § 1102(a). The powers so vested are virtually co-extensive with the power to regulate immigration. See, e.g., 8 U.S.C. § 1103, including (g) thereunder.

A sub-set of that broad grant of power is found within 8 U.S.C. § 1184, headed "Admission of Non-Immigrants." Under that statute, subsection (a), hinges admission of any alien as a non-immigrant "for such time and other such conditions" as the Executive Branch may prescribe. Within that Section are provisions imposing fraud prevention and detection fees upon employers filing false forms ETA-750 and other petitions, 8 U.S.C. § 1184(c)(13)(A), and (B). The statute also empowers the Secretary of the Department of Homeland Security to hold hearings and, after notice and an opportunity to be heard, impose fines and penalties upon an employer who submits a false or fraudulent application in order to obtain, *inter alia*, H-2B employees. 8 U.S.C. § 1184(c)(14)(A).

The Code of Federal Regulations contains more than 30 pages addressing only seasonal alien temporary workers. 8 C.F.R. § 214.2(h)(1), *et seq.*, extending for 30 pages within the Code of Federal Regulations, sets forth the procedure governing and representations by contract with the United States Department of Labor binding upon petitioner seeking H-2B workers, including wages and other terms and conditions of employment. The Secretary of Labor wields both the jurisdiction and power to address instances in which the petitioning employer has failed to meet the statutorily required contractual conditions for obtaining the seasonal alien laborers. Under § 214.2(h)(11)(B), the Director may revoke a petition at any time, even after its expiration, based upon the petitioner's statements of facts contained in the position being "not true and correct," or that petitioner had "violated terms and conditions of the approved petition" or other standards set forth therein.

No wonder there is preemption. The statute itself provides for preemption. Indeed, 8 U.S.C. § 1324(a)(h)(2) reads in its entirety:

> The provisions of the section preempt any state or local law
> imposing civil or criminal sanctions (other than through licensing
> and similar laws) upon those who employ, or recruit or refer for a
> fee for employment, unauthorized aliens.

Even were there no statutory preemption, nonetheless the law would compel it.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -5-

---

## CASE LAW

Not surprisingly, the case law interpreting the scope and breath of the federal statutory and regulatory components governing immigration and including seasonal workers has denied to all others the jurisdictional power or standing to raise claims otherwise within the four corners of the Congressional enactments and Federal Code provisions. Indeed, in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 147-48 (2002), the Supreme Court denied to a federal entity -- the National Labor Relations Board -- the authority to construe its enabling legislation to include giving back pay awards to aliens unauthorized to work in view of the overarching primacy of Title 8 of the United States Code.

Thus, it is not surprising that every Court which has considered the issue has determined that the comprehensive federal scheme preempts any state regulation, even if non-conflicting or parallel, and that there is no private right of enforcement. See, e.g., *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941) (striking down a Pennsylvania alien registration statute on grounds of federal pre-emption, observing "where the federal government in the exercise of its superior authority in this field, has enacted a complete scheme of regulation ... states cannot, inconsistently with the purpose of Congress, conflict or interfere with, curtail or complement, the federal law, or enforce additional or excilarary regulations."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)("states can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states."); accord *Gade v. Nat'l Solid Waste Management Assoc.*, 505 U.S. 88, 108 (1992); *Perry v. Thomas*, 482 U.S. 483 (1987); *DeCanas v. Bico*, 424 U.S. 351, 355 (1976); *Spina v. Department of Homeland Sec.*, 470 F.3d 116, 127-28 (2nd Cir. 2006)(using federal law to construe applicability, if any, of Connecticut statute to federal sentencing enhancement guidelines because, *inter alia*, "the immigration laws contain no provision indicating that they are to be interpreted in accordance with state law."); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893-96 (10th Cir. 1972); *Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F.Supp.2d 1036 (D. Ariz. 2008); *Lozano v. City of Hazleton*, 496 F.Supp.2d 477, 517-528 (M.D.Pa. 2007); *Shah v. Wilco Systems, Inc.*, 126 F.Supp.2d 641, 648-49 (S.D.N.Y. 2000); *United States v. Richard Dattner Architects*, 972 F.Supp. 738, 742 (S.D.N.Y. 1997); *Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146 (D.Colo. 1971); *Younus v. Shabat*, 336 F.Supp. 1137, 1140 (N.D.Ill. 1971).

And, without a private cause of action, there is no "parens patriae" jurisdiction permitting your Office to become involved in the matters you state are under investigation. The remedies are distinctly federal. See, e.g., *Castellanos- Contreras v. Decadur Hotels, LLC*, 488 F.Supp.2d 565 (E.D. La. 2007). Put another way, there is not a single case that holds that a state has the power or standing to pursue a person or entity for alleged false statements to the United States Department of Labor to obtain seasonal workers.

**SPECTOR GADON & ROSEN, P.C.**

ATTORNEYS AT LAW

July 8, 2008
Page -6-

_____

From the Supremacy Clause set forth in Article VI, Clause 2, the powers over commerce and immigration vested in Congress pursuant to Article I, Clause 8, and the authorities set forth, *supra*, it is painfully obvious that the New York Office of the Attorney General lacks any power with respect to the matter that it contends is under investigation. The substance and breadth of such investigation reside solely and exclusively within the federal government.

That being the case, it is our considered view that your proceeding with your investigation will do nothing other than force our clients to bear substantial legal costs and fees while resulting in an opinion holding that your Office lacks jurisdiction over the matter under investigation.

It is because of the costs and fees, however, that I am authorized to submit to you a formal response to your settlement proposal. I am authorized to represent that our clients are willing to enter into a consent decree, based on no admission of wrongdoing, that results in an order enforceable by you for breach, if such decree will close your investigation and, therefore, end the costs attendant to our clients' unwilling participation in these proceedings. In addition, our client will pay the sum of $35,000, in acknowledgement of the costs and expenses you have incurred in connection with your investigation, albeit one over which you lack jurisdiction.

I would propose that the consent agreement include a weekly wage rate for the periods of time within which our clients' mobile carnival is set up in New York. I would not presume to suggest what other reasonable conditions you deem important or appropriate; however, as I have advised you since the inception of our representation, our clients are more than willing to agree to any reasonable terms and conditions of a consent order.

Alternatively, we encourage you to submit the fruits of your investigation to the United States Department of Labor. That Department has the jurisdiction and standing to address whatever issue you deem important.

I look forward to your response.

Sincerely,

*Bruce*

Bruce L. Thall

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 8, 2008
Page -7-
_____

BLT/jkw

# EXHIBIT "G"

# SPECTOR GADON & ROSEN, P.C.
### ATTORNEYS AT LAW

NEW JERSEY OFFICE:
1000 LENOLA ROAD
P.O. BOX 1001
MOORESTOWN, NJ 08057
[856] 778-8100
FAX: [856] 722-5344

SEVEN PENN CENTER
1635 MARKET STREET
SEVENTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
[215] 241-8888
FAX: [215] 241-8844
WWW.LAWSGR.COM

FLORIDA OFFICE:
360 CENTRAL AVENUE
SUITE 1550
ST. PETERSBURG, FL 33701
[727] 896-4600
FAX: [727] 896-4604

E-MAIL
bthall@lawsgr.com

*Bruce Thall*
DIRECT DIAL NUMBER
[215] 241-8802

July 14, 2008

**via email: andrew.elmore@oag.state.ny.us**
Andrew Elmore, Esquire
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York City, NY 10271

Re:     **Dreamland Investigation**

Dear Mr. Elmore:

I am writing you in response to your demand pursuant to your initial office subpoenas to our clients that they appear for interrogation on July 15 by you and your office subject to the limitations upon me as counsel that you have previously delineated.

I suggested last week that you agree to postpone this date for testimony in view of your having served on me on July 8 a document headed "additional" subpoenas so that my clients and I, to the extent that you permit me to appear and represent my clients under your office subpoena procedures, will not have to appear for repeated, serial interrogations by you and your office, but rather need contend with only one set appearance.

Your office refused.

Andrew, I have given you in writing my concerns about the constitutionality of your office's procedures regarding testimony for office subpoenas, which procedures exclude me from participation at your whim and caprice, and limit that I am permitted to do even if you allow me to be present. Your considered responses to not allay those concerns, particularly in view of your offices' representations that its investigation has already found violations. All this, for an investigation over which your office lacks jurisdiction and standing in view of preemption and the overriding federal question.

In order to sort all this out, we are sending out today for filing a complaint for declaratory judgment and injunctive relief. On our receiving word that it has been filed, we will send a copy to you by electronic means. Its grounds are those I have provided to you in our past correspondences.

**SPECTOR GADON & ROSEN, P.C.**
ATTORNEYS AT LAW

July 14, 2008
Page -2-

_____

     We will not appear for testimony absent the court ruling on our application. In the meantime, our clients will gather the documents responsive to your "additional" subpoenas, and forward them to us for review, categorization and Bates stamping, just as they have done in response to your initial office subpoena.  This way, we will be in a position to forward them on to you should we not prevail in the litigation.

     Given the vastly divergent views our respective offices have of the jurisdiction and standing of your office with regard to our client's employment of alien, seasonal laborers under the contracts with the United States Department of Labor, it seemed to me that a judicial holding would not only serve each of our clients' interests but also save each of clients from expending time and dollars that might otherwise be put to better use.

             Very truly yours,

             Bruce L. Thall

BLT/jkw

508812

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN THE APPLICATION OF ANDREW M. CUOMO, ATTORNEY GENERAL OF THE STATE OF NEW YORK,<br><br>          Petitioner,<br><br>for an Order under C.P.L.R. § 2308(b) to enforce compliance with subpoenas<br><br>   -- against --<br><br>DREAMLAND AMUSEMENTS, INC., TOY CIRCUS, INC., CROSSROADS TRUCKING CORP., ROBERT F. DESTEFANO, JR., KATHRYN L. DESTEFANO, and any other owners and corporate officers of Dreamland Amusements, inc., Toy Circus, Inc., and/or Crossroads Trucking Corp.,<br><br>          Respondents. | Case No. 08-cv-7100 (JGK)<br>ECF Case<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**CERTIFICATE OF SERVICE** |

I, Heather M. Eichenbaum, certify that:

On September 4, 2008, I caused to be served a copy of the within document on Plaintiff by e-mailing a true copy thereof to Andrew J. Elmore, Esquire of the State of New York Office of the Attorney General co-counsel for Plaintiff at Andrew.Elmore@oag.state.ny.us and Julian R. Birnbaum, Esquire of the State of New York Office of the Attorney General co-counsel for Plaintiff at Julian.Birnbaum@oag.state.ny.us and Judith Marblestone, Esquire of the State of New York Office of the Attorney General co-counsel for Plaintiff at judith.marblestone@oag.state.ny.us.

                                   Heather M. Eichenbaum, Esquire