UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                    **Plaintiff,**

      - against -

DREAMLAND AMUSEMENTS, INC., ET AL.,

                    **Defendants.**
────────────────────────────────────

08 Civ. 7100 (JGK)

OPINION AND ORDER


DREAMLAND AMUSEMENTS, INC., ET Al.,

                    **Plaintiffs,**

      - against -

ANDREW M. CUOMO, ATTORNEY GENERAL OF
THE STATE OF NEW YORK,

                    **Defendant.**
────────────────────────────────────

08 Civ. 6321 (JGK)

**JOHN G. KOELTL, District Judge:**

The Attorney General of the State of New York has been
conducting an investigation of Dreamland Amusements, Inc., and
various other parties (collectively "Dreamland") concerning
possible violations of various state and federal laws relating
to Dreamland's employment of alien employees authorized to work
on a seasonal basis pursuant to temporary work visas ("H-2B
employees").  Dreamland responded to this investigation by
bringing a lawsuit for declaratory and injunctive relief in this

Court, No. 08 Civ. 6321 (JGK), seeking to enjoin certain parts of the investigation on the grounds that they are preempted under federal law. When the Attorney General then brought a proceeding in the New York State Supreme Court, New York County, to enforce certain investigatory subpoenas, Dreamland removed that proceeding to this Court, No. 08 Civ. 7100 (JGK), arguing that the proceeding was preempted by federal law. These cases therefore raise issues of the scope of federal preemption, the degree to which preemption creates a basis for federal jurisdiction, and the proper role for a federal court in the face of an ongoing state investigation into violations of state and federal laws.

There are three motions now pending before the Court. The first is a motion by Order to Show Cause filed by the New York State Attorney General in No. 08 Civ. 7100 (JGK) to remand to state court the petition to compel Dreamland to comply with certain investigatory subpoenas. The second is a motion by the Attorney General to dismiss Dreamland's Complaint in No. 08 Civ. 6321 (JGK) for Declaratory and Injunctive Relief regarding the Attorney General's investigation and potential future prosecution (hereafter "investigation") of Dreamland. The third is a motion by Dreamland, also in No. 08 Civ. 6321 (JGK), for a Preliminary and Permanent Injunction regarding the same

investigation.  The Court addresses each of these motions in turn.

I

The following facts and procedural history pertaining to all three of the motions are not disputed by the parties, unless otherwise indicated.

Dreamland is a mobile carnival that operates in several states along the East Coast, including New York.  (Complaint ¶¶ 17-18; Elmore Aff. ¶ 10.)[1]  In the time period under investigation, a substantial portion of Dreamland's workforce was comprised of alien employees authorized to work for Dreamland on a seasonal basis pursuant to temporary H-2B work visas ("H-2B employees").  (Complaint ¶ 25; Elmore Aff. ¶ 15.) In order to seek temporary labor certification for H-2B employees, Dreamland filed Applications for Alien Employment Certification ("ETA 750A forms") with the New York State Department of Labor (NYS DOL), as required by federal law. (Elmore Aff. ¶ 16.)  The NYS DOL sent the applications to the United States Department of Labor (US DOL), also pursuant to federal law.  In signing and submitting the ETA 750A forms, Dreamland pledged to pay its H-2B employees a rate of pay listed

---

[1] Citations to "Elmore Aff." refer to the affidavit submitted by the Attorney General to the state court in support of the subpoena compliance proceeding, and resubmitted to this Court as Exhibit A of the Order to Show Cause.

in the ETA 750A forms at or above the prevailing wage as determined by the NYS DOL. (Complaint Ex. A.) Dreamland also pledged not to discriminate against the H-2B employees, and that the terms, conditions, and occupational environment of the job were not contrary to federal, state, or local law.[2] (Complaint Ex. A.)

The Attorney General alleges that it began receiving complaints that Dreamland was engaged in unlawful employment practices in 2007. (Elmore Aff. ¶ 13.) According to the Attorney General, employee complaints included the failure of Dreamland to pay full or minimum wages and overtime, the failure to provide H-2B employees with work and living conditions equal to those of non-H-2B employees, and the failure to provide sanitary and standard housing for employees. All of these allegations, if true, would provide bases for alleging violations of New York State law. (Elmore Aff. ¶ 28.)

The Attorney General launched an investigation of Dreamland's employment practices. Pursuant to its investigation, the Attorney General served subpoenas on Dreamland requiring testimony and production of documents relating to its employment policies, tax returns, payroll and time records, and documents filed with state and federal

---

[2] Dreamland does not explicitly acknowledge this promise, but it is clear from the face of the ETA 750A forms that Dreamland has submitted as Exhibit A of its Complaint for Declaratory and Injunctive Relief.

agencies regarding wages and other terms of employment. (Elmore
Aff. Ex. E.) The Attorney General claims that it served the
subpoenas based on information it had gathered from the
employees' allegations, the ETA 750A forms, and surveillance of
the Dreamland worksite that corroborated employee allegations
about the number of hours worked.

Dreamland initially produced documents and indicated that
it would comply with the subpoenas, but ultimately refused to
produce further documents or testimony. (Complaint ¶¶ 46-48.)
On July 14, 2008, Dreamland filed a Complaint in this Court, No.
08 Civ. 6321 (JGK), for Declaratory and Injunctive Relief
precluding the Attorney General from proceeding with its
investigation.[3] The Complaint seeks, among other things, an
injunction decreeing that preemption blocks the New York State
Attorney General from prosecuting any claim based in whole or in
part on the construction or interpretation of the ETA 750A
contracts between Dreamland and the US DOL. On July 29, 2008,
the Attorney General filed a petition in New York State Supreme
Court, New York County, by Order to Show Cause to compel
Dreamland to comply with the subpoenas. On August 1, 2008,
Dreamland moved in this Court, in No. 08 Civ. 6321 (JGK), for a

---

[3] Dreamland literally asks the Court to prevent the Attorney General from
proceeding with its "ongoing civil and potentially criminal prosecution."
(Complaint ¶ 6.) Because there is no ongoing prosecution of Dreamland, the
Court construes Dreamland's request to refer to the ongoing (and currently
stalled) investigation of Dreamland and the possibility of a future
prosecution based on the investigation.

Preliminary and/or Permanent Injunction against the Attorney General's investigation. On August 6, 2008, the Attorney General moved in this Court to dismiss Dreamland's Complaint. On August 8, 2008, Dreamland removed the Attorney General's petition to compel Dreamland to comply with the investigatory subpoenas from state court to this Court, and that proceeding is pending under No. 08 Civ. 7100 (JGK). On August 15, 2008, the Attorney General moved by Order to Show Cause to remand the petition to compel back to state court.

II

The Attorney General moves to remand to state court its petition to compel Dreamland to comply with the investigatory subpoenas. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Under 28 U.S.C. § 1441, removal of a state court action to a district court is proper whenever the federal court has original jurisdiction over the action.[4] The parties agree that the present action is not within the diversity jurisdiction of the Court. Thus the sole question at issue on the Attorney General's motion to remand is

---

[4] The removal statute provides that: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . ." 28 U.S.C. § 1441(a).

whether the Court possesses jurisdiction over this action
pursuant to 28 U.S.C. § 1331, which provides that: "The district
courts shall have original jurisdiction of all civil actions
arising under the Constitution, laws, or treaties of the United
States." 28 U.S.C. § 1331.

The Attorney General makes two arguments for remand: the
case does not arise under federal law, and the case is not a
civil action eligible for removal. For the reasons explained
below, the Court finds that the case does not arise under
federal law. It is thus unnecessary to reach the question
whether the Attorney General's petition to compel Dreamland to
comply with its subpoenas constitutes a civil action eligible
for removal.

A

The major thrust of Dreamland's argument for "arising
under" jurisdiction is that the Attorney General's investigation
is preempted by federal immigration law. The Attorney General
argues that even if the investigation were preempted, this would
not justify removal, because preemption would only be a defense
to the Attorney General's petition to compel compliance with its
subpoenas and would thus fail the "well-pleaded complaint rule."
The Attorney General also argues that the investigation is not
preempted in any event.

The well-pleaded complaint rule provides that for a case to arise under federal law, "a right or immunity created by the Constitution or the laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." Gully v. First National Bank, 299 U.S. 109, 112 (1936). Put another way, "removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." Travelers Indemnity Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986). See also Sullivan v. American Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005)("As a general rule, a suit seeking recovery under state law is not transformed into a suit 'arising under' federal law merely because, to resolve it, the court may need to interpret federal law."). The Supreme Court has explicitly applied the well-pleaded complaint rule to cases involving the federal defense of preemption: "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 14 (1983).

There is an exception to the well-pleaded complaint rule: the "artful pleading doctrine." Under this doctrine, "a plaintiff may not defeat federal subject-matter jurisdiction by

8

'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." <u>Sullivan</u>, 424 F.3d at 271. Of particular relevance to this case, "[t]he artful-pleading doctrine includes within it the doctrine of complete preemption . . . Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims – i.e., completely preempted." <u>Id.</u> at 272. Thus, the force of federal preemption may be so great that a claim, if it exists at all, must arise under federal rather than state law. <u>See Box Tree South, Ltd., v. Bitterman</u>, 873 F.Supp. 833, 838-39 (S.D.N.Y. 1995). However, "[t]he Supreme Court has only found three statutes to have the requisite extraordinary preemptive force to support complete preemption: § 301 of the Labor-Management Relations Act (LMRA), § 502(a) of the Employee Retirement Income Security Act (ERISA), and §§ 85 and 86 of the National Bank Act." <u>Sullivan</u>, 424 F.3d at 272. The Court of Appeals for the Second Circuit has added a fourth statute to the list: the Copyright Act, 17 U.S.C. §§ 102, 103, 106, and 301(a). <u>Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.</u>, 373 F.3d 296 (2d Cir. 2004).

The action that Dreamland seeks to remove is the Attorney
General's petition to compel compliance with its subpoenas.  The
Attorney General brought this action under state law.  N.Y.
C.P.L.R. § 2308(b) authorizes the issuer of a subpoena to move
in the state supreme court to compel compliance.  The subpoenas
themselves were issued under N.Y. Executive Law § 63(12), which
authorizes the Attorney General to investigate and eventually
apply to the state supreme court to enjoin businesses from
engaging in repeated fraudulent or illegal acts.  The Attorney
General alleges as the basis for its investigation possible
violations of various state laws, including state record-keeping
laws, wages laws, hours laws, and anti-discrimination laws.  The
Attorney General also alleges that Dreamland fraudulently
misrepresented to the NYS DOL that it would pay its employees a
prevailing wage and adhere to federal, state, and local laws,
because it pledged to do these things on the ETA 750A forms
submitted to that agency.  The affidavit submitted to the state
court in support of the subpoena compliance proceeding explained
the scope of the investigation as follows:

> Based on this information and a preliminary
> investigation conducted by the Attorney General's Office
> ("the Office"), there is evidence that the Respondents
> have engaged and may continue to be engaging in repeated
> and persistent fraudulent and illegal conduct under
> Executive Law § 63(12) by violating, inter alia,
> Articles 6 and 19 of the Labor Law; 12 N.Y.C.R.R. Part

142; Executive Law §§ 290 et seq.; the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq.; and 10 N.Y.C.R.R. Subpart 7-3 by:

a.   failure to pay the full wages required under the law, including the H-2B prevailing wages;

b.   failing to pay overtime compensation, at the rate of one and one-half times the employees' regular rate for hours worked in excess of 40 in a given week, or at least at the rate of one and one-half times the minimum wage;

c.   conducting discriminatory employment practices by paying employees differently based on their race, color, alienage or national origin;

d.   failing to provide safe and hygienic housing to employees;

e.   failing to comply with record-keeping and other requirements under the Labor Law; and,

f.   misrepresenting to New York State the wages and working conditions of Dreamland employees.

(Elmore Aff. ¶ 28.)

Because the petition is authorized by state law and raises exclusively state-law claims,[5] it is clear that any effort to remove the petition would at least initially fail to meet the well-pleaded complaint requirement.  The action seeks relief under state law, and a federal claim would not appear on the face of a well-pleaded complaint.  Therefore, for Dreamland to remove the action, it must show that the action fits the artful

_____

[5] Even the Attorney General's claim based on the ETA 750A forms is a state-law claim.  The ETA 750A forms are federal forms, but the claim is that by presenting them to the NYS DOL, Dreamland misrepresented to the state that it would adhere to the promises it made on the forms.

pleading exception to the well-pleaded complaint rule. It has failed to do so.

Dreamland argues that the Attorney General's investigation is preempted by federal immigration law. But federal immigration law does not completely preempt state law claims coming within the scope of federal immigration statutes. Federal immigration statutes are not included among the four enumerated statutes with extraordinary preemptive force that have been recognized either by the Supreme Court or the Court of Appeals for the Second Circuit. See Sullivan, 424 F.3d at 272; Wall v. CSX Transp., Inc., 471 F.3d 410, 423 n.11 (2d Cir. 2006). There is no authority for expanding the existing categories to include federal immigration statutes.[6] Expansion of the existing categories is discouraged. See Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 752 (1983) (warning that "complete preemption is not lightly implied."); Fayard v. Northeast Vehical Services, LLC, 533 F.3d 42, 48 (1st Cir. 2008) ("the Supreme Court has described complete preemption as a 'narrow exception' to the usual rule against federal jurisdiction or removal premised merely upon a prospective federal defense. Both jurisdiction and removal are primarily

---

[6] One district court cited immigration as a subject of complete preemption, but provided no support for that conclusion, and the inclusion of immigration was dicta in a case that found no complete preemption and did not concern immigration. See Fumo v. Gallas, No. 00 Civ. 4774, 2001 WL 115460 at *3 (E.D.Pa. Feb. 6, 2001).

creatures of Congress; and the balance Congress has struck
should not lightly be disregarded.  Congress has only rarely
chosen to make a federal defense the basis for federal
jurisdiction or removal. . . .") (internal citations and
quotations marks omitted).

The Court of Appeals for the Second Circuit has explained
that the list of completely preemptive federal statutes should
only be expanded, according to the Supreme Court, where a
"federal statute . . . both preempts state law and substitutes a
federal remedy for that law, thereby creating an exclusive
federal cause of action." Briarpatch, 373 F.3d at 305.  But
Dreamland has failed to show that any immigration statutes fall
within this category.  Dreamland does not point to any specific
language reflecting a Congressional intent that federal remedies
should displace state ones for any of the alleged violations
investigated by the Attorney General.  It is not enough to show
that a federal statute provides a remedy, and to assert that the
remedy is meant as a substitute for any state remedies.  In
Briarpatch, the Court of Appeals explained that "the Copyright
Act lays out the elements, statute of limitations, and remedies
for copyright infringement.  It therefore follows that the
district courts have jurisdiction over state law claims
preempted by the Copyright Act." Id.  Dreamland shows nothing
of the sort here.  The specific federal immigration provisions

Dreamland points to fall well short of the Briarpatch standard
for complete preemption. See, e.g., 8 U.S.C. § 1184(c)(14)(A)
(providing for certain sanctions for employers who fail to meet
conditions of a petition to admit a nonimmigrant worker, but
specifying that its remedies are "in addition to any other
remedy authorized by law"). Indeed it would be remarkable if
Congress had silently displaced all state laws with respect to
the protection of workers if the workers were aliens.

Dreamland underestimates the difference between complete
preemption, which would be required to remove the action here,
and preemption, which could be asserted as a defense in state
court. Cf. Wall, 471 F.3d at 423 n.11. Dreamland does not
mention complete preemption in its removal papers. Elsewhere,
Dreamland acknowledges the necessity of complete preemption, but
supports its argument that complete preemption exists with cases
that discuss normal preemption. For example, Dreamland cites
Hines v. Davidowitz, 312 U.S. 52 (1941), a case that was decided
well before the Supreme Court developed the doctrine of complete
preemption. In holding that a certain Pennsylvania statute
regarding alien registration had been preempted by federal
legislation on the same subject, the Hines court concluded that
"the power to restrict, limit, regulate, and register aliens as
a distinct group is not an equal and continuously existing
concurrent power of state and nation, but . . . whatever power a

14

state may have is subordinate to supreme national law." Hines, 312 U.S. at 68. The court said nothing to suggest that state law claims in the field were always federal claims in disguise. Compare Beneficial National Bank v. Anderson, 539 U.S. 1, 7 (2003) ("When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of a state law, is in reality based on federal law."). Indeed, Hines was a federal action to enjoin the enforcement of a state statute and did not involve the issue of removal.

Dreamland similarly misconstrues Takahashi v. Fish and Game Commission, 334 U.S. 410 (1948), in suggesting that it supports complete preemption in this case. In Takahashi, another case not involving the question of removal, a state was trying to "single out and ban its lawful alien inhabitants, and particularly certain racial and color groups within this class of inhabitants, from following a vocation." Id. at 420. The case proceeded in state court by a writ of mandamus and was reviewed by the Supreme Court on a petition for certiorari. There is no suggestion that the preemption was complete preemption such that any claim would arise under federal law. The Supreme Court held that these discriminatory laws "conflict[ed]" with the federal power to regulate immigration, and noted that "the power of a state to apply its laws

exclusively to its alien inhabitants as a class is confined within narrow limits." Id. at 419, 420. The language of conflict with federal law reflects a discussion of preemption, not complete preemption. The Court's analysis did not broach the topic of complete preemption of any state laws affecting immigration, such that any state claim is in reality a federal claim.

Dreamland also argues that the investigation is completely preempted by the Fair Labor Standards Act ("FLSA"). This argument is also unavailing because the FLSA, like federal immigration law, is not among the established bases for complete preemption, nor does it meet the criteria set forth in Briarpatch for the potential expansion of the complete preemption doctrine. It is well settled that the FLSA is not intended to preclude state labor laws. See, e.g., 29 U.S.C. § 218 ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . ."); Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61 (2d Cir. 2003) (applying both the FLSA and New York labor laws to the same dispute).

Dreamland argues that it qualifies for an FLSA exemption for certain seasonal amusement companies.  See 29 U.S.C. § 213(a)(3).  Whether Dreamland does qualify for this exemption, and whether the same exemption should be read into the state law, are certainly issues that can be raised in state court. The existence of an FLSA exemption does not create complete preemption and does not provide a basis to remove an action from state court.  "The application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."  Corning Glass Works v. Brennan, 417 U.S. 188, 197 (1974).  Therefore it is not a basis for complete preemption and it is not a basis to remove an action to federal court.

Because the Attorney General's action is not completely preempted by federal immigration or labor laws, such that the claims it might assert would in reality be federal claims, there is no basis for removal of the state court action to federal court.  Therefore, the state court action will be remanded to the New York State Supreme Court, New York County.


III

The Attorney General moves to dismiss Dreamland's Complaint for Declaratory and Injunctive Relief, which seeks to enjoin the Attorney General from prosecuting any claim based in whole or in

17

part on the construction or interpretation of the ETA 750A

forms.  The Motion to Dismiss urges various bases for dismissal,

including that the Complaint is not ripe for judicial review and

that <u>Younger</u> abstention applies.  Each of these arguments is

sufficient to dismiss the Complaint, and the Court addresses

each in turn.

A

The Attorney General argues that the Complaint, in which

Dreamland asserts that the Attorney General's investigation is

preempted by federal law, is not ripe for judicial review

because the investigation is still in an early stage.  Dreamland

contends that the controversy is ripe because Dreamland has been

forced to choose among three alternatives: continuing its

business and risking further liability, hiring no H-2B employees

and consequently shutting down its operations, or paying its H-

2B employees the compensation demanded by the Attorney General,

which Dreamland claims it does not owe.

Ripeness is a justiciability doctrine "drawn from both

Article III limitations on judicial power and from prudential

reasons for refusing to exercise jurisdiction."  <u>Reno v.</u>

<u>Catholic Social Services, Inc.</u>, 509 U.S. 43, 57 n.18 (1993).

The doctrine is designed to "protect the agencies from judicial

interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties." <u>National Park Hospitality Ass'n v. Department of Interior</u>, 538 U.S. 803, 807-808 (2003) (quoting <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148-49 (1967)). "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." <u>Id.</u> at 808.

A court should refrain from enjoining an administrative action, such as an investigation, where the issue sought to be reviewed is not "ripe" for review. See <u>United States v. Construction Products Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996)(upholding the jurisdictional authority of the Nuclear Regulatory Commission ("NRC") to issue a subpoena to and conduct an investigation of Construction Products Research, because the appropriate time to challenge this authority was "[i]f and when the NRC decides to use the information obtained by the subpoena," not before); <u>Clearing House Association, LLC v. Cuomo</u>, 510 F.3d 105 (2d Cir. 2007) (vacating an injunction issued by the district court precluding the New York State Attorney General from enforcing the Fair Housing Act against Clearing House members, because no enforcement proceeding had begun and the issue was unripe); <u>AVCO Financial Corp. v. Commodity Futures Trading Com'n</u>, 929 F.Supp. 714, 720-22

19

(S.D.N.Y. 1996) (finding that ripeness was a "promising defense" to a company's effort to "challenge the investigatory authority of the Commission at a relatively early phase before the Commission has been allowed to investigate all of the facts relating to" the company).

In this case, the issues raised in the Complaint are not ripe for judicial review.  Dreamland has not demonstrated either the fitness of the issues for judicial decision or any substantial hardship that would result from the Court withholding consideration of the matter.

"[T]he 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur."  New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008) (quoting Simmonds v. I.N.S, 326 F.3d 351, 359 (2d Cir. 2003) (internal citation and quotation marks omitted).  The issues Dreamland seeks to adjudicate here are subject to such uncertainty.  Dreamland predicates its preemption argument on the proposition that the Attorney General's investigation is based on Dreamland's alleged violation of the ETA 750A forms Dreamland submitted with regard to its H-2B employees.  (See, e.g., Complaint ¶¶ 3, 44, 50-52).  Dreamland contends that these forms represent contracts with the federal government, the terms and violations of which are the exclusive concern of the federal government.  But because the

investigation has not yet ripened into a prosecution, it is unclear whether the Attorney General would even rely at all on the ETA 750A forms to prosecute Dreamland. As discussed in Section I above, according to the Attorney General, the ETA 750A forms represent only one of several bases for the investigation of Dreamland. It is entirely possible that if a prosecution ever occurs, it will not make use of the ETA 750A forms. It cannot seriously be disputed that many of the alleged wrongs under investigation, including employment discrimination, would violate state law regardless of whether they also violated the terms of the ETA 750A forms. Therefore, the issues raised by Dreamland are not fit for judicial review.

Dreamland has also failed to demonstrate "hardship" from the continuance of the investigation. "In assessing this possibility of hardship, we ask whether the challenged action creates a direct and immediate dilemma for the parties. The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." Grandeau, 528 F.3d at 134 (internal citations and quotation marks omitted). The hardship advanced by Dreamland is the threat of litigation. (Complaint ¶ 54.) But the possibility of future litigation does not cause Dreamland a direct and immediate dilemma. Contrary to its contention, Dreamland does not have to stop hiring H-2B employees and shut down its

operations.  As the Attorney General points out, even with respect to the ETA 750A forms, all that Dreamland has to do is to comply with the promises it already made in the forms it filed.  This could not be considered to be a current hardship. Moreover, this is a case in which Dreamland has ready access to the state court to raise any issues it chooses to raise.

Because Dreamland has failed to demonstrate either the fitness of the issues for judicial review or any hardship that would result from the Court's withholding consideration of the issues, the claims raised in the Complaint are not ripe.

B

The Attorney General argues that the Complaint should be dismissed under abstention doctrine, explained in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), because Dreamland could raise its preemption claims in a pending state court proceeding. Dreamland counters that abstention would be inappropriate on three grounds: there is no pending state proceeding, the Attorney General has no valid interest that it is seeking to enforce, and abstention does not apply to cases of "readily apparent" preemption.

"<u>Younger</u> generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings . . .

Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002).

The first question is whether there is an ongoing state proceeding. The Attorney General argues that the issuance of the investigatory subpoenas under state law constituted a state proceeding that was pending at the time Dreamland filed its Complaint. The Attorney General argues in the alternative that its Motion to Compel Compliance with the state subpoenas, filed in state court, also satisfies the "ongoing proceeding" requirement. Although the Motion to Compel was filed after Dreamland's Complaint was filed in this Court, the Attorney General argues that because the Complaint was filed in anticipation of the Motion to Compel, and because in any event the Complaint did not represent a proceeding of substance on the merits, it does not matter for Younger purposes that the Motion to Compel followed the filing of the Complaint. Dreamland argues that there is no ongoing state proceeding, because the issuance of the investigatory subpoenas did not constitute a proceeding, and the Complaint represented a proceeding of

substance in federal court, thus preventing the Motion to Compel
from being considered an ongoing state proceeding.

The Court of Appeals for the Second Circuit has not
considered whether the issuance of subpoenas constitutes an
ongoing state proceeding for abstention purposes.  See J. & W.
Seligman & Co., Inc. v. Spitzer, No. 05 Civ. 7781 (KMW), 2007 WL
2822208 at *5 (S.D.N.Y. Sep. 27, 2007).  However, Chief Judge
Wood of this Court has held that where subpoenas "were issued by
the Attorney General pursuant to an investigation of Plaintiffs'
allegedly illegal activities, and the information sought may be
used to initiate civil or criminal proceedings against
Plaintiffs," the issuance of subpoenas qualifies as an ongoing
state proceeding.  Id.  The subpoenas issued by the Attorney
General here fit this description precisely.[7]  Because Younger
abstention is rooted in principles of federalism and comity, see
Younger, 401 U.S. at 43-44, and the state's interest in this
case in investigating and possibly prosecuting those who commit
crimes within its borders implicates those principles, the
subpoenas sufficed to initiate an ongoing state proceeding.

Moreover, the Motion to Compel that followed the Complaint
and that is now pending satisfies the requirement of an ongoing
state proceeding.  Dreamland does not dispute that the Motion to

---

[7] The distinction drawn by Dreamland, that the subpoenas issued in Spitzer were
not office subpoenas like the ones issued by the Attorney General, and were
thus somehow more compulsory than the subpoenas here, is unconvincing.

Compel would constitute a state proceeding.  Rather, it argues
that the Motion was not an ongoing state proceeding when
Dreamland filed its Complaint, and therefore the Court should
not abstain to allow a state court proceeding to proceed because
that proceeding was not "ongoing."  However, the Supreme Court
has rejected such a narrow view of Younger abstention: "Where
state . . . proceedings are begun against the federal plaintiffs
after the federal complaint is filed but before any proceedings
of substance on the merits have taken place in the federal
court, the principles of Younger v. Harris should apply in full
force."  Hicks v. Miranda, 422 U.S. 332, 349 (1975).  Hicks
squarely controls the issue in this case: because the Motion to
Compel came after the federal Complaint was filed but before any
other proceedings in federal court, the Younger abstention
doctrine applies in "full force."  Therefore there is an ongoing
proceeding for purposes of the abstention doctrine.

     The next question in deciding whether abstention applies is
whether an important state interest is implicated by the ongoing
state proceeding.  The Attorney General argues that it has a
strong interest in enforcing the laws of the State of New York
and investigating illegal conduct.  Dreamland argues that the
Attorney General has no valid interest in its ongoing state
proceeding because New York's wages and hours laws are preempted

by federal laws, and their enforcement is the exclusive province of the government.

The Attorney General clearly satisfies the "important interest" component of the abstention doctrine. A state's interest in enforcing its own laws and investigating their violation cannot seriously be disputed. Moreover, the State of New York has an important interest in assuring safe, sanitary, and non-discriminatory working conditions for workers in the State. If any part of the investigation were limited by federal preemption, those issues can be raised in the ongoing state court proceeding. Even if any part of the state's wages and hours laws were preempted, because the Attorney General is investigating more than wages and hours violations, this narrow preemption would not be a reason to interfere in the ongoing state court proceeding. Thus, the Attorney General satisfies the "important interest" prong of the abstention doctrine.

The third question in determining whether the abstention doctrine applies is whether the ongoing state proceeding affords the federal plaintiff a forum to bring its constitutional claims – here, the claim of preemption. The Attorney General argues that Dreamland could have raised its preemption claim in state court either in a motion to quash the subpoenas, or as a federal defense in a response to the pending Motion to Compel. Dreamland does not provide a reason why it could not have raised

its preemption claim in state court through either of these methods.  It argues instead that abstention is inappropriate in cases of readily apparent preemption, and that this is such a case.

Dreamland could have raised its preemption claim in state court.  State courts routinely hear cases in which federal preemption is asserted as a defense.  See, e.g., Babalola v. Crystal Chemicals, Inc., 644 N.Y.S.2d 1 (App. Div. 1996).  There is no reason that the state court cannot hear and decide all of Dreamland's preemption claims.  Therefore the third prong of the abstention doctrine has been satisfied.

This is also not a case where the Court should refuse to apply the Younger abstention doctrine because Dreamland raises a preemption claim.  In New Orleans Public Service, Inc. ("NOPSI") v. Council of the City of New Orleans, 491 U.S. 350 (1989), the Supreme Court rejected the argument that "a district court presented with a preemption based request for equitable relief should take a quick look at the merits; and if upon that look the claim appears to be substantial, the court should endeavor to resolve it."[8]  Id. at 364.  In refusing to carve out an exception to Younger abstention for preemption cases, the Supreme Court noted that such an exception would be illogical,

---

[8] However, the Supreme Court did not apply abstention to the case because the state ratemaking proceeding was not the type of proceeding to which Younger abstention applied.  NOPSI, 491 U.S. at 367-68.

because the federal interest in enforcing constitutional guarantees is just as strong as the federal interest in enforcing federal statutes that may preempt state laws, and "the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction." Id.

The Attorney General has satisfied the pre-requisites for Younger abstention. This is a particularly apt case to apply Younger abstention. In NOPSI, the Supreme Court instructed that preemption was not an exception to Younger abstention. While some earlier Second Circuit cases had declined to apply Younger abstention when a preemption defense might render the state court proceeding futile,[9] that is not the case here. Dreamland seeks to carve out a portion of the state investigation and the state court subpoena enforcement proceeding relating to the ETA 750A forms, but the rest of the state proceeding could proceed. The net effect of Dreamland's tactics would be to interfere with and divide a state court proceeding which is attempting to further important state interests. Younger abstention requires

---

[9] See Christ the King Regional High School v. Culvert, 815 F.2d 219, 224 n.4 (2d Cir. 1987) (explaining that "it would be futile to abstain in deference to a state decisional body if it later should develop that it may not have jurisdiction over a dispute due to the preemptive jurisdiction of a federal body"); Stone & Webster Engineering Corp. v. Ilsley, 690 F.2d 323, 326 n.2 (2d Cir. 1982). In re Pan American Corp., 950 F.2d 839 (2d Cir. 1991), a preemption case decided after NOPSI in which the Court of Appeals for the Second Circuit declined to abstain, involved the special context of bankruptcy. "A presumption against abstention when there are preemption issues thus serves the best interests of debtors and their creditors." Id. at 847.

this Court to refrain from interfering with that state court proceeding.[10]

IV

Dreamland moves for a Preliminary Injunction and Permanent Injunction to enjoin the Attorney General's investigation. Because the Court has dismissed the Complaint for Declaratory and Injunctive Relief, the Motion for Preliminary Injunction is moot. However, even had the Court not dismissed the Complaint, the Motion for a Preliminary Injunction would still fail.

"In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). However, "where the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party

---

[10] It is therefore unnecessary to reach the Attorney General's additional arguments that the Court lacks subject matter jurisdiction and that the state law is not preempted in this case.

establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." Id.

Because the Attorney General's investigation is taken pursuant to state statutes and in the public interest, the more rigorous standard for establishing the need for a Preliminary Injunction applies here. Dreamland does not come close to meeting that standard. As explained above, no irreparable injury has been shown because the present detriment to Dreamland from the investigation is that it must participate in an investigation. The costs of such compliance do not constitute irreparable injury. To the extent that Dreamland complains about complying with its ETA 750A forms, it agreed to do so when it filed those forms. Furthermore, for all of the reasons explained above in the analysis of whether the Complaint should be dismissed, Dreamland was not likely to succeed on the merits of its claim. Therefore, Dreamland has not met the standards for a preliminary injunction.


CONCLUSION

The Court has considered all of the arguments made by the parties. To the extent not specifically addressed above they are either moot or without merit.

(1) The Attorney General's Motion to Dismiss No. 08 Civ.

6321 (JGK) is **granted** and that case is dismissed.  The Motion

for a Preliminary Injunction is **denied**.

(2) The Attorney General's Motion to Remand No. 08 Civ.

7100 (JGK) is **granted** and the Clerk is directed to remand that

case to the New York State Supreme Court, New York County.

(3) The Clerk is directed to close both cases on the docket

of the Court.

**SO ORDERED.**

**Dated:**     **New York, New York**
               **September 22, 2008**

_____
John G. Koeltl
United States District Judge